Losee *v.* Buchanan.

could be no possible injury to the defendant. (11 *Barb.* 241. 16 *id.* 386. 2 *Comst.* 193.) And the court will disregard it, on this motion for a new trial.

[THIRD DEPARTMENT, GENERAL TERM, at Schenectady, November 14, 1871. *Miller*, P. J., and *Parker* and *Daniels*, Justices.]

HARVEY LOSEE *vs.* COE S. BUCHANAN and DANIEL A. BULLARD, impleaded with the Saratoga Paper Company.

Where the plaintiff was injured, in his real property, by the accidental explosion of a steam boiler on the premises of a corporation, adjoining those of the plaintiff, and which boiler was placed there for use, and was being used at the time, by said corporation, in its business; and which boiler, by the force of such explosion, was cast upon the premises of the plaintiff, and destroyed his property ; *Held* that such corporation, and its agents, under whose direction such boiler was being used, at the time, were liable for the damage thereby occasioned, without proof of any negligence on its, or their part. *Per* POTTER, J.

A corporation can only act by its agents. If an injury accrues to any one by its action, it must be because such action is induced and directed by its agents. In an action brought against a corporation, and its managing agents, to recover damages for an injury to real estate, caused by the explosion of a steam boiler upon the premises of the corporation, it is erroneous to charge the jury that such agents are not liable for any negligence, or unskilfulness, on the part of the corporation, or the manufacturers of the boiler.

Where an injury, done by a corporation, is occasioned by the negligence, or unskilfulness, of the agent who put the corporation in motion, it is erroneous to hold that the corporation, alone, is liable, and not the controlling agent.

It is also erroneous to hold that a corporation may escape liability, if an injury

Losee *v.* Buchanan.

occurs at the time its sub-agent, whom it employs to conduct its affairs, happens to be in charge ; or that in such a case the corporation, *only*, is liable.

In an action against a corporation and its managing agents, to recover damages for an injury to real estate, caused by the explosion of a steam boiler, owned by it, it is erroneous to charge that if the engineer who had charge of the boiler, came to the conclusion that to reduce the pressure from 120 to 110 pounds to the square inch, would render the use of the boiler prudent and safe, and communicated that idea to a director and managing agent, and the latter believed, and acted upon the information, then he was not liable.

It is also error to refuse to charge, in such an action, that the defendants cannot excuse, or justify themselves, in the use of the boiler in question, on the ground that the same was purchased of reputable manufacturers ; where it is proved that the size, form, character and materials of the boiler had been directed and ordered by the defendants, and the boiler was made in conformity with the directions.

THIS action was brought to recover damages arising from an injury occasioned by the explosion of a large rotary iron steam boiler, while the same was owned and being used by the Saratoga Paper Company, at their mill, situated in the village of Schuylerville, Saratoga County, and State of New York, on the 13th day of February, 1864, by means whereof the boiler was projected, and thrown on to the plaintiff's premises, and through several of his buildings, thereby injuring and damaging the same, and destroying personal property therein.

Buchanan and Bullard were joined with the Paper Company as defendants in the action, on the ground that they were trustees, stockholders and agents of the corporation, and superintending its business as such, and therefore jointly liable with the company in the action. The Clutes, who manufactured the boiler, were also made defendants, on the ground that they made it in a negligent manner, in consequence of which negligence the boiler exploded.

The case was first tried at the Saratoga circuit in January, 1866, before Justice POTTER and a jury, when the complaint was dismissed as to the Clutes, and a verdict

rendered against the other defendants for $3420, upon which judgment having been entered up, the defendants made a case and appealed to the general term. The general term in the fourth district, in October, 1866, set aside the verdict and granted a new trial, on the ground that the judge at the circuit erred in excluding evidence to show that the defendants were not guilty of any negligence in procuring, or in the use of, the boiler in question. The case was again tried, in January, 1867, before Justice Rosekrans and a jury, when a verdict was rendered againt the paper company for $2703.36 damages, and in favor of the defendants Buchanan and Bullard.

On the trial the plaintiff asked the court to charge the jury separately on the following propositions:

1st. That it was not necessary for the plaintiff to prove, in order to entitle himself to recover, that the defendants were guilty of any negligence, in the use of the boiler in question.

2d. That the plaintiff was entitled to recover against the defendant, the paper company, if the explosion of the boiler occurred in consequence of the defects in the construction of, or the materials of which the boiler was made; and that the company was liable therefor, although the defects were secret, and not open to observation, and although the company had no knowledge, or notice, of such defects.

3d. That the defendants Bullard and Buchanan were also liable, if they participated in the use and operation of the boiler, without any proof of negligence on their part, if the company was liable without such proof of negligence.

4th. That the defendants could not excuse, or justify, themselves, in the use of the boiler in question, on the ground that the same was purchased of reputable manufacturers, for the reason that it was made to conform in

Losee *v.* Buchanan.

size to the directions of the defendants; that it was the largest boiler ever made, and hence the manufacturers had no experience in the use of such boilers, which fact was known to the defendants; and that hence the result of the experiment of using such a large boiler, could not be justified, or excused, by the defendants' having bought the boiler of manufacturers of reputation.

5th. That if the greater leakage, occurring at the north end than at the south end, was evidence that the north end was the weakest, yet the fact that the south end leaked, and the explosion occurred there, was evidence of greater weakness at that end.

The court declined so to charge, separately on each proposition; and the plaintiff duly excepted.

The defendant requested the court to charge several propositions; the last of which, only, it is necessary to notice here. That was as follows: "10th. That if the jury found, from the evidence, that Goddard came to the conclusion that to reduce the pressure from 120 to 110 (pounds to the square inch,) would render the use of the boilers prudent and safe, and communicated that idea to Bullard, he, Bullard, was not personally liable."

The court so charged, and the plaintiff excepted.

The other requests, by defendants, to the judge, to charge the jury, and the charge of the judge to the jury, so far as the same are material, sufficiently appear in the opinion of the court.

The plaintiff moved for a new trial, on the minutes of the judge, as to the defendants Buchanan and Bullard, but the judge denied the motion; and after the entry of judgment on the verdict in favor of those defendants, the plaintiff appealed to the general term.

*A. Pond*, for the appellant.

The judge erred in admitting evidence; in his charge and refusals to charge the jury; and also in denying the

motion to set aside the verdict on his minutes. I. The judge erred in admitting evidence tending to show, or for the purpose of showing, that the defendants were not guilty of negligence in procuring, and in the use of, the boiler in question, notwithstanding the decision of the general term deciding that such evidence was proper.

1st. As to the Paper Company: The act of the company in casting the boiler in question on to the premises of the plaintiff, was a direct trespass upon the right of the plaintiff to the undisturbed occupation and possession of his own premises. "To this possession, the law prohibits all direct injury, without regard to its extent, or the motives of the aggressor." (*Farrand* v. *Marshall*, 21 *Barb.* 409, 419. *Per Gardiner, J., in Hay* v. *Cohoes Co.*, 2 *Comst.* 161. *Tremain* v. *Same, Id.* 163; approved in *Radcliff's Ex'rs* v. *Mayor*, 4 *id.* 199. *Hay* v. *Cohoes Co.*, 3 *Barb.* 42. *Bellinger* v. *N. Y. Central R. R.*, 23 *N. Y.* 47. *Pixley* v. *Clark*, 35 *id.* 523. *Id.* 210.) The above cases are direct authorities to show that the ruling of the judge at the circuit, that evidence to show negligence was necessary to warrant a recovery for the plaintiff; so far as the paper company is concerned; and that the latter could exculpate itself from liabilty by showing that the injury was committed, notwithstanding the exercise of the most extreme care on its part, was erroneous.

2d. As to the defendants Buchanan and Bullard: If the paper company was liable as for a direct injury to the plaintiff, for the damage and injury occasioned by the explosion of the boiler, as is above shown, then the defendants Buchanan and Bullard were equally liable with the company, without other proof than that they were stockholders, trustees, agents and servants of the company, and superintending and carrying on its business at the time. The proof of their official character as well as their agency and interest was overwhelming. Under such circumstances, Buchanan and Bullard, who were the hands and

Losee *v.* Buchanan.

arms, and brains by which the corporation was operated, were personally liable for the injury to the plaintiff's property occasioned by the explosion of the boiler in question. Indeed, if there is to be any distinction between the corporation and the defendants, who managed and controlled it, as to the degree of culpability to be attributed to each in consequence of the acts occasioning the injury, the agents, being the most culpable in the premises, the more stringent civil liability should therefore be imposed on them. And the defendants Buchanan and Bullard are doubtless liable for manslaughter, a liability to which the paper company could not be subjected. (2 *R. S.* 662, § 19. *Thomas* v. *Winchester*, 2 *Seld.* 409.) But it is enough, for the purpose of the plaintiff, that Buchanan and Bullard are equally liable *civiliter* with the paper company. Such liability renders it unnecessary to show any actual negligence on their part, and also forbids their exculpating themselves by proving that they used the greatest care and caution in demolishing the buildings of the plaintiff and destroying his property. (*Suydam* v. *Moore*, 8 *Barb.* 358. *Judson* v. *Cook*, 11 *id.* 642. *Montfort* v. *Hughes*, 3 *E. D. Smith*, 591. *Phelps* v. *Wait*, 30 *N. Y.* 78.) In *Suydam* v. *Moore*, above cited, the action was brought against the engineer and fireman of the Saratoga and Schenectady Railroad Company, for negligently running over and killing the plaintiff's cow. The judge charged the jury "that negligence on the part of the defendants need not be proved." The defendants excepted, and after verdict for the plaintiff the defendants appealed to the general term, where the judgment was affirmed. And this case is cited and the principle of it followed by the Court of Appeals in *Phelps* v. *Wait*, (30 *N. Y.* 78.) The result, therefore, is, that the evidence tending to show, or for the purpose of showing, that the defendants were guilty of no negligence in obtaining and using the boiler in question, at the

place where, and in the manner in which it was used, was inadmissible.

3d. The decision of the former general term, holding the evidence admissible, was itself erroneous, and should not be regarded as controlling in the case, but should be reversed, and the true rule adopted.   (*a.*) Because such former decision is in direct conflict with the decisions of the Court of Appeals, and in effect disregards or overrules them.   By examining the opinion of Justice BOCKES, which prevailed at the general term, it will be seen that he does not fairly, or at all, meet the question involved in the case. The position maintained by the plaintiff is this: That he had the right to the undisturbed possession and lawful enjoyment of his property—his real estate ; that the right of the paper company to use and occupy their adjoining property was subject to this absolute and paramount right on the part of the plaintiff, to this undisturbed occupancy and enjoyment of his property; that the paper company, and the defendants Buchanan and Bullard, by the manner in which they used and occupied the adjoining real estate of the paper company, although such use and occupancy were entirely lawful, have caused not only the invasion of the plaintiff's possession of his own property, but also damaged and destroyed it.   Now can this be justified by showing that it was done in the exercise of the extremest care and caution, and without any negligence on the part of the company or its agents ?   The plaintiff contends not, and he cites the case of *Hay* v. *The Cohoes Company*, as an authority for the principle which he claims applies to this case.   In that case there was no question but that the company had a legal right to dig the canal.   That right was conceded, and the naked question was presented, whether in the exercise of that conceded legal right, the company was liable for damages occasioned by it, without any negligence on its part; and whether evidence was admissible to show that it was not guilty of any negligence

Losee *v.* Buchanan.

in the digging of the canal. What was the response of the Court of Appeals to this question? Judge Gardiner. whose opinion prevailed in the case, said: "The defendants had the right to dig the canal; the plaintiff, the right to the undisturbed possession of his property. If these rights conflict, the former must yield to the latter, as the more important of the two, since upon grounds of public policy it is better that one man should surrender a particular use of his land, than that another should be deprived of the beneficial use of his property altogether, which might be the consequence, if the privilege of the former should be wholly unrestricted. The case before us illustrates the principle. For, if the defendants, in excavating their canal, in itself a lawful use of their land, could in the manner mentioned by the witnesses, demolish the stoop of the plaintiff with impunity, they might for the same purpose, on the exercise of reasonable care, demolish his house, and thus deprive him of all use of his property." Now it will be seen that the only difference between this case and the one above cited, is this : That while in that case the plaintiff's stoop only was demolished, in this, the very thing has occurred which was supposed by Judge Gardiner in that case, for illustration, that is to say, the defendants in this case have, as they claim, in the exercise of reasonable care, entirely demolished the houses and buildings of the plaintiff, and destroyed his property, and according to the opinion of Judge Bockes the plaintiff is remediless, and the defendants go "scot free." And from what kind of reasoning does Judge Bockes reach such a conclusion? By collating and bringing together a large number of authorities to show that a defendant is not liable in certain cases, unless negligence on his part is shown. But this proposition was never denied. No doubt, in cases of collision on the highway, or on railroads; in setting fire to and burning fallows; in shoveling off snow and ice from the roofs of houses, and in a multitude of

other cases too numerous to mention, negligence is essential to make out a cause of action. But where the action is for a direct invasion of one's possession of land, does the fact that it is done carefully justify the invasion? That is the question here. And not a case cited by Judge Bockes gives any color for the decision that this case is not governed and controlled by the decision in the Cohoes Company cases. I insist that it is, and that therefore the decision of the judge at the circuit, in receiving the evidence tending to show that the defendants were not guilty of negligence, was erroneous. (*b.*) The former general term having manifestly erred in holding that the evidence was admissible, the court should now reverse such decision and grant a new trial, on the ground that the decision of the Court of Appeals is of higher and more controlling authority than that of the general term, where the two conflict. (*Lewis* v. *McMillen,* 41 *Barb.* 428, 434.)

II. The judge erred in charging the jury: 1st. That the defendants were not liable for negligence or want of skill on the part of the manufacturers of the boiler in question, not known to it. This instruction was manifestly erroneous, as it exonerated the defendants from all liability arising from culpable ignorance on their part. A defendant may be as culpably negligent in not knowing or being informed of existing facts, as in omitting to exercise proper care and caution, after he has acquired such knowledge. A party who disregards a notice sufficient to put him on inquiry, is equally as negligent and liable as one who fails to act after he acquires full knowledge. The above decision utterly ignores this plain principle of law, and is therefore palpably erroneous. 2d. The judge erred in deciding that the defendants were not liable, except upon proof of negligence or unskillfulness on the part of the authorized servants or agents of the company. This charge is wrong, because it excludes all liability, on the part of the defendants, for damages occasioned by the defective con-

struction of the boiler, even after notice of such defects, and also because it excludes all liability on the part of the company and its agents, for using such a dangerous instrumentality, without that knowledge of its character which was essential to its use without danger, and for the want of which the explosion occurred and the damages were caused. The defendants are chargeable for that want of knowledge, irrespective of all questions of actual negligence, and the decision above mentioned was therefore erroneous. (*Dygert* v. *Bradley*, 8 *Wend.* 469.) 3d. The judge also erred in deciding that the defendants were not liable for the projection of the boiler, or any part of it, upon the plaintiff's premises, unless it was done through the negligence or unskillfulness of some of the company's officers or agents. This decision is erroneous, for the reasons already assigned in subdivisions one and two of this point. And it may be observed here, that these several decisions are not warranted by the former decision of the general term. The only question involved in the case, at the former general term, was whether evidence to show that the defendants were not guilty of negligence was admissible on the part of the defendants; the question as to the effect, and whether, being admitted, it should, in and of itself, constitute an entire defense, was not, and could not have been involved. Hence the court cannot be embarrassed on this question by the former decision of the general term. 4th. The judge erred in deciding and charging as to the defendant Buchanan: (*a.*) That there was no proof of any relation between the plaintiff and the said defendant, creating any obligation or duty on the part of the latter towards the former. This is entirely erroneous. If it means anything, it takes the case from the jury, and begs the whole question, and decides the entire case against the plaintiff as a matter of law, alone. The theory of the plaintiff is, that the defendant Buchanan, being a stockholder in the company, and one of the trus-

tees who superintended the running of the defendants' mill, who contracted for the making of this boiler, directed the size it should be made, it being the largest ever made, and it being made on a statement of Buchanan that he had seen as large a one before, which was untrue; that after it was put up, he was cognizant of the breaking out of two heads before, and of the leaking of this boiler, and from Goddard repeatedly telling him he was afraid to stand behind this boiler, and from the fact that Buchanan was a paper maker, and was chargeable with a knowledge of the dangerous character of the boiler; that Buchanan was liable for the damages occasioned by the explosion, to the plaintiff. But this whole theory is disposed of at a glance, by this decision of the judge, that there was no proof of any relation between the plaintiff and the said defendant, creating any obligation or duty on the part of the latter, towards the former. If not, then of course the jury would have no right to bring in a verdict in favor of the plaintiff, against the defendant, by which the defendant would be made to pay the plaintiff the damages occasioned by the explosion. Certainly no one, who owed no duty to a plaintiff, and who has violated none, should be made to pay damages for such supposed violation of duty. It is submitted that this decision cannot be supported. (*b.*) That the defendant Buchanan is not liable for any negligence or unskillfulness on the part of the Saratoga Paper Company, or on the part of the manufacturers in question. This is a most extraordinary proposition. The principle contained in it would exonerate Buchanan from liability for his own negligence. In the first place, he was a trustee and agent of the company, and the only way the company can be guilty of negligence, is through the negligence of its officers and agents. Buchanan was both officer and agent, and if the explosion was occasioned through his negligence, as such officer and agent, it would then be occasioned by the negligence of the company, as well. And this decision or

Losee *v.* Buchanan.

charge of the judge exempts him from "liability for any negligence or unskillfulness on the part of the Saratoga Paper Company," although such negligence of the paper company might have been solely occasioned by the neglect of Buchanan himself, as its officer and agent. And, in fact, such was the case. There is no doubt but that this explosion did occur through the culpable negligence of Buchanan in procuring these large boilers—the largest ever seen. If, therefore, the defendants are only liable in case they are guilty of negligence, surely the agent and officer of the company, guilty of the very negligence occasioning the injury, is no less liable, because his negligence is also imputable to the company as its own. The proposition, if true in any sense, should have been qualified so as not to have exonerated Buchanan from liability, in case the negligence of the company was occasioned by the negligence of Buchanan himself. 5th. The judge erred in charging, as to all the defendants, that if the jury were of the opinion that the reduction, by Goddard, of the steam pressure from 120 to 110 was a proper, prudent and sufficient exercise of care and skill under the circumstances, the defendants were not liable on account of leakage. This was manifestly erroneous, for the reason that it made the liability of the defendants to rest solely on a state of circumstances existing a week or more previous to the explosion, and utterly ignored, and directed the jury to ignore, the change of circumstances that subsequently occurred. For instance, a reduction of pressure from 120 to 110 pounds might have been sufficiently prudent one week prior to the explosion, whereas the indications three days later, arising from increasing leakage, might have required a still greater reduction, or, indeed, might, in the opinion of the jury, have required an entire suspension of the running of the boiler. The testimony of Goddard on this point is, that this reduction of the pressure was a week before the explosion; and that subsequently, and

down to two or three days before the explosion, the leakage continued to increase. He says : " Two or three days before the explosion, I called Bullard's attention to the south end of the boiler, as leaking badly, and said to him that I was afraid of that boiler; I told him it was leaking badly, and leaking worse every day." Now can it be pretended that a reduction of pressure on the boiler which was sufficient three days before, was, as matter of law, and irrespective of what the jury might say upon that subject, sufficient four or five days afterwards, when the leakage had increased, and when, in consequence of such increasing evidence of weakness, Goddard told Bullard he was " afraid of that boiler." It seems to me the instruction was wrong, and palpably so.

6th. The judge also erred in charging that the cold-shut in the head that previously gave out, was no evidence of the cold-shut in the head that did not give out. Now this, as matter of law, is not correct. It was solely a question of fact for the jury, whether the circumstance that a cold shut in one head, which gave out, did not tend to show the defendants that the same defects might exist in the other head that did not give out. They were both made by the same manufacturer, and out of the same material. Besides, the judge, in his charge to the jury, had already alluded to that circumstance, as one proper for their consideration. I submit, therefore, that this instruction was wrong. It was, in effect, telling the jury that the defendants could not learn any thing from experience, and it was, therefore, incorrect. Moreover, the judge himself also repudiated such a principle, in refusing to charge the jury as requested by the defendants, that such cold shut was not sufficient notice to Goddard, in regard to the cold shut in the head, that did give out. On what principle the judge could give the instruction first above mentioned, and refuse the other, I am at a loss to comprehend. The truth is, the judge decided correctly as to the last, and erroneously as to the first.

Losee *v.* Buchanan.

7th. The judge erred in charging, as requested by the defendant Bullard, that if Goddard told Bullard that it would be prudent to run them at 110, and if Bullard believed that, and acted upon it, then he was not liable. (*a.*) This is erroneous, because it allowed the jury to exempt Bullard from liability if they found that he believed what Goddard told him, even though.from his own senses, and the other evidence which he was cognizant of, he had no right to believe it. He may have done, under the circumstances,. what no prudent man would have done, that is to say, he may have believed Goddard, against the evidence of his own senses. The question as to Bullard's negligence, is only to be determined in view of all the evidence in the case, and not by selecting therefrom a single item, and determining whether his conduct was prudent when considered in. reference to that alone. The rights of the plaintiff are not to be concluded simply by the advice given by Goddard to Bullard. It would be a curious principle of law that would exclude the judgment of the jury from passing on the question, as to whether Bullard acted negligently or not in the matter, on a view of the entire case; and absolutely exonerating him on what another servant of the company told him, no matter how absurd soever it might be, or how inconsistent with all the other evidence in the case. (*b.*) But the instruction was also erroneous, because it submitted a question of fact to the jury, upon which there was not a particle of evidence. Goddard never told Bullard it would be prudent to run the boiler in question at any pressure; he did tell him he had reduced the pressure from 120 to 110, and "that the result was just as good," but that was far from saying that it was prudent to run at 110. The instruction was, therefore, erroneous, because it allowed the jury to find a fact, about which there was no evidence. (*Gale* v. *Wells*, 12 *Barb.* 84. *Small* v. *Smith*, 1 *Denio*, 586. *Harris* v. *Wilson*, 1 *Wend.* 511. *Dolsen* v. *Arnold*, 10 *How.*

528.) (*c.*) But if Goddard did tell Bullard, as assumed, in this instruction, and Bullard did believe it, (of which belief there is no evidence,) still this would not exempt Bullard from all liability. As before shown, this was a week before the explosion ; and two or three days before the explosion Goddard again called Bullard's attention to the increasing leakage, and also informed him "that he was afraid of that boiler." Now, under such circumstances, would the fact, if it were true, that Goddard had previously told Bullard that a reduction to 110 was sufficient, necessarily excuse him when subsequently told that the leakage was increasing, and that he, Goddard, was afraid of the boiler, and when it appears that Bullard did not make any particular remark ? The instruction was erroneous.

8th. The judge also erred in charging, that if Goddard came to the conclusion that reducing the pressure to 110, would render the use of the boiler prudent and safe, and communicated that idea to Bullard, he (Bullard) was not personally liable. This instruction is obnoxious to all the objections specified in the last preceding point. But it is obnoxious to a more fatal objection still. This required the jury, if they found that even though Goddard did communicate an idea to him, of which there is no evidence, but which, if communicated at all, Bullard himself not only did not believe, but actually knew better than to believe it, still they must let him off. Certainly that cannot be law. If Bullard is to be saved by Goddard at all, it is only through faith in him, that it can be done.

III. The judge erred in refusing to charge as requested by the plaintiff: 1st. That the plaintiff was entitled to recover without proving negligence. (*See 1st point, and authorities cited.*) 2d. That the defendants could not justify, or excuse, themselves in the use of the boiler in question, because it was purchased of reputable manufacturers. This principle, if applicable at all to any case, has no ap-

plication here. This was the largest boiler ever made. It was directed to be made so large by Buchanan. Now it is manifest that the Clutes had no experience on which the defendants could rely. They tried an experiment, and must, themselves, suffer the consequences of it, and cannot shelter themselves under others, who merely made what they were directed to make.

IV. The verdict of the jury is against the evidence, and should be set aside on the merits. The defendants are all liable, independent of all questions of negligence. They put up a dangerous engine near to the plaintiff's premises, which exploded and destroyed his property. The jury have found a verdict against the company, on the alleged negligence of Goddard. But Goddard is the only one of the party who continually protested against the use of these boilers. Of all, he was the most free from fault. But the defendants, who had the boilers made, and used them in spite of Goddard's protestations, are the guilty parties. They were bound to know that the boilers were safe, before using them in such a place, and for failing in that respect, they are liable, irrespective of all questions of negligence. (*Dygert* v. *Bradley*, 8 *Wend.* 469.)

V. The verdict should be set aside, and a new trial granted, with costs.

*W. A. Beach*, for the respondent Buchanan.

*E. F. Bullard*, for the respondent D. A. Bullard.

I. The charge of the court was correct. (35 *N. Y.* 210.) The first and third requests to charge were properly denied, because they were covered by the former decision at general term. The second is immaterial, because the jury found against the company. The fourth and fifth requests of the plaintiff merely amounted to asking the court to express an opinion upon questions of fact. It was

not error for the court to refuse to do so. (*Moore* v. *Meacham*, 10 *N. Y.* 207.) The size of the boiler was proper to be considered by the jury, and the court so instructed them; and that is to be taken as qualifying the refusal.

II. There was no error in the charge, given as requested, that if Goddard told Bullard that it would be prudent to run the boilers at 110; and if Bullard believed that statement, and acted upon it, then he was not liable. Goddard was conceded to be a skillful man, and Bullard not so. That portion of the charge, as well as that immediately following, viz., that if the jury should find that Goddard came to the conclusion that to reduce the pressure from 120 to 110 would render the use of the boilers prudent and safe, and communicated that idea to Bullard, the latter was not personally liable—is to be read in connection with what the judge afterwards charged. (18 *N. Y.* 534. 16 *id.* 407.) The charge will then read: "That if Goddard told Bullard that it would be prudent to run the boilers at 110, and Bullard believed that, and acted upon it, he would not be liable. That if Goddard came to the conclusion that to reduce the pressure from 120 to 110 would render the use of the boilers prudent and safe, and communicated that idea to Bullard, he (Bullard) was not personally liable. But if you come to the conclusion that the explosion was produced by either or all of the circumstances, (to wit, using it at 110, &c.,) and the defendants had knowledge of the facts, then the defendants are liable. Or if you should believe that the indications of weakness were such as to require the foreman to stop the boiler and inquire what the defect was, but that he did not do so, then you have a right to say that the defendants are liable for his acts. And you have a right to say whether Bullard was chargeable with the use of that boiler, or not, after Goddard had told him it was not prudent to use it at over 110." The above clauses of the charge clearly qualify the two requests, and in effect leave the whole ques

tion to the jury, to say whether Bullard was guilty of negligence in any particular.

There was no error in either of the requests to charge, or in the charge as given. The court fairly submitted the questions to be considered by the jury. In effect, the first eight points quoted by the court merely amount to expressions of opinion by the court upon the facts, to which no exceptions lie. There was no exception to the charge as finally given.

There was no error at the trial prejudicial to the plaintiff, and the judgment should therefore be affirmed as to the defendant Bullard, with costs.

*By the Court*, POTTER, J. The undisputed facts in this case may be thus stated: The defendants, " The Saratoga Paper Company," was a corporation duly organized under the laws of this State, with three directors or trustees, two of whom were the defendants Coe S. Buchanan and Daniel A. Bullard, who, as such directors, had the active agency of organizing the said corporation, and had the management and control and chief conduct of the business of said corporation. The defendants located their mill for the manufacture of paper, at the village of Schuylerville, in the county of Saratoga, on a lot adjoining the premises of the plaintiff, on which the plaintiff had buildings, and a row or a series of buildings continuing along the same street, on various lots northerly, and nearly adjoining each other. That to conduct and carry on their manufacture of paper, the defendants procured and had put into their said paper mill, a very large rotary iron boiler, which they used for boiling straw, preparatory to making it into paper. This boiler was seven feet in diameter, and nearly thirty feet in length; would hold nearly 3000 gallons of liquor, and with its fixtures, weighed about 27,000 pounds. On the night of the 13th of February, 1864, this boiler exploded, and was cast and thrown, by the explosion, with

its fixtures, northwardly upon and along the plaintiff's premises, some 300 feet or more, passing through and demolishing almost entirely, five or six buildings, stores, shops and dwellings of the plaintiff, on the easterly side of the street. The amount of damage was variously estimated by witnesses.

It is proper here to say, that on the first trial of this action, which was before me, I held that in such case the plaintiff was not bound to show negligence on the part of the defendants to entitle him to recover his damages, and that proof by the defendants, of due care on their part, was not a defense. A verdict was rendered for the plaintiff, against the corporation and the defendants Bullard and Buchanan. An appeal was brought upon the judgment so obtained, and upon the ground of my ruling, as above stated, the judgment was reversed, and a new trial ordered.

Upon the last trial, the judge held the law, as the general term had held it, that negligence was necessary to be proved by the plaintiff, in such case, in order to entitle the plaintiff to recover; and evidence, both to prove and disprove negligence, was offered by the respective parties and submitted to the jury; and a verdict was found against the corporation only, and in favor of the defendants Bullard and Buchanan. From the judgment entered thereon the plaintiff has appealed; and among other objections and exceptions taken on the trial, he has repeated the same question of law that was the ground of granting a new trial; to wit, "that where one is in the lawful possession and use of his own property, adjoining owners of land may not directly throw or cast dirt, stones or other substances thereon, to his injury, and that the party so doing is liable for the injury occasioned, though he may at the time be pursuing a lawful occupation; and that negligence or want of skill need not be proved against the party who causes such an injury, to entitle the injured party to recover." I held this proposition to be the law, on the first

Losee v. Buchanan.

trial. I did not assent to a reversal of the judgment, on the ground that it was not the law; and a further consideration of the case has not changed my first convictions. A proper respect, however, to the opinions of my brethren who thought otherwise, compels me to yield obedience to their decision, if still insisted upon by them; and to adopt their views of the law of this case, while it remains in this court. In justice, however, to myself, and that my views may not be misrepresented, if this case shall proceed further, I give as briefly as I may, the grounds of my opinion on the first trial, as well as at present. The plaintiff's counsel has presented the point clearly before us, and insists upon its reconsideration, and asks a reversal of the judgment and ruling of the general term, in this respect.

In three distinct forms this proposition was ruled against by the judge, on the last trial; and on each occasion excepted to by the plaintiff's counsel; once on the defendant's request to nonsuit, on the converse of the proposition which the judge adopted; once on the request of the plaintiff to charge the jury that this proposition was law—which the judge refused; and once on the charge of the judge to the jury. These rulings, it is conceded, it was the duty of the judge to make, in obedience to the rule adopted at general term. If this is sound law, it is necessary either to distinguish this case from a series of adjudications long recognized to be the law, in the courts of the highest authority of this State, and of England, or of overruling or entirely disregarding such cases. I am unable to make such distinction; and with my view of the law, it seems to me unbecoming to attempt to overrule or ignore their authority. The modern cases of *Hay* v. *The Cohoes Company*, (2 N. Y. 159, 161;) *Tremain* v. *The Same*, (Id. 163, 164,) and *Radcliff's Executors* v. *The Mayor of Brooklyn*, (4 N. Y. 195, 210,) are striking cases of authority against the rule of the general term in this case. In the latter case, Bronson, J., who delivered

the opinion of the court, and in which all concurred, cited the two former cases with approbation, and said, "one cannot rightfully enter, or cast anything on the land of another, unless he have license from the owner, or an authority in law for doing the act. And the absence of a bad motive will not save him from an action." In *Tremain* v. *Cohoes Company*, on the trial, in the court below, the defendants offered to prove that the work from which the injury proceeded, was performed in the best and most lawful manner; but the court excluded the evidence. In the Court of Appeals, in review of that question, Gardiner, J., with whose opinion the whole court agreed, said : "How the defendants performed their work was, in this view, of no consequence. What they did to the plaintiff's injury, was the sole question. Upon that issue the evidence offered was calculated to mislead, instead of enlightening the jury. We therefore think the court was right in excluding it." The issue in that case was the same as this. So in the case of *Hay* v. *the same defendant*, the same judge, speaking for the whole court, said : "The plaintiff was in the lawful possession and use of his own property. The land was his, and as against the defendant, by an absolute right. The defendant could not directly infringe that right by any means, or for any purpose." He also, in speaking of the facts of that case, said : "The defendants had a right to dig the canal; the plaintiffs to the undisturbed possession of their property. If these rights conflict, the former must yield to the latter, as the more important of the two," &c. There is another class of cases relating to other matters, which are based on this same, and as I think, universal principle of justice : That where one of two innocent parties must suffer loss, he who puts in motion the cause of the injury must bear the loss. This principle, and the principle of the cases above cited, is also recognized and approved in various decisions of the general term of the Supreme Court in other districts,

especially in *Farrand* v. *Marshall*, (21 *Barb.* 419, *&c.*)   In this case, Wright, J., holds the following language : " The defendant can use his land, even to the destruction of the soil, for agricultural or building purposes, and the plaintiff has no right to control such use, so long as it does not directly infringe his right of domain, or the property ; but if the mode of use is destructive of this absolute right of the plaintiff, the law holds the defendant responsible, irrespective of the question of malice or negligence, for all damages resulting therefrom." And he further says, " that this principle lies at the foundation of a wisely regulated social organization.   Without such restraint, a social organization can scarcely exist respecting the absolute rights of all its members, and protecting the property of each, and his enjoyment of such property in the soil."   He further says : " Let the principle prevail, that an individual may use his land, even though by the means of using it, it renders insecure, or destoys, that of his neighbor ; whilst it would be repugnant to natural justice, it would invade the relative rights of others, as understood and established by the common law."   Such were my views on the first trial of this cause.   In my reading of the common law, these views had been strongly impressed upon my mind.   I have since looked, somewhat, to see if I was mistaken.   Going back to more ancient authority, I find that *Blackstone* says, that " whenever an act itself is directly and immediately injurious to the person or property of another, and therefore necessarily accompanied with force, an action of trespass, *vi et armis*, will lie. This means, an entry upon another's grounds without a lawful authority, and doing some damage to his real property.   For, the right of *meum* and *teum*, or property in lands being once established, it follows as a necessary consequence, that this right must be exclusive ; that is, that the owner may retain to himself the sole use and occupation of his soil, and every entry, therefore, thereon,

without the owner's leave, is a trespass." (3 *Black. Com.* 209.) *Puffendorf*, a distinguished ancient writer on the law of nations, lays down this as the rule: "In case a man be hurt or injured by another in any respect, the person who stands justly charged as author of the wrong ought, so far as lies in his power, to make reparation. For otherwise it would have been a vain command, 'not to harm another,' if the party who actually suffers such harm, must be content to put up with it without further notice, and leave the offender to enjoy in peace, the fruit of his injury; never obliging him to refund, or to restore. Furthermore, were not restitution made a necessary duty, neither would wicked men ever abstain from wronging others; nor would those who have been injured find it an easy task to compose their mind in such a manner, as to maintain peace with the other party, so long as they obtained no recompense or consideration for their sufferings." (*Book* 3, *ch.* 1, § 2.)

The same writer gives the following instance, by way of illustration: "It is clear, beyond the least doubt or dispute, that the owner of beasts stands responsible for those damages which they commit by their natural and accustomed violence, and the common force of their peculiar instincts. For the owner ought either not to keep such creatures, or carefully to restrain them from doing mischief."

Nor was this less the common law of England, whose adjudications are quoted with approbation by our highest court, in the cases I have above cited. As long ago as the reign of Charles II, in the case of *Lambert* v. *Bessy*, reported by Sir Thomas *Raymond*, 422, 423, the following illustrations are given, as well as the principle upon which the court based its decision. "In all civil cases, the law doth not so much regard the intent of the actor, as the loss and damage of the party suffering." In an action of trespass qu. cl. fre. upon six acres of land, the defendant

pleaded that he had an acre lying beside the said six acres, and beside it, a hedge of thorns, and he cut the thorns, and they *ipso invito*, fell upon the plaintiff's land, and the defendant took them off as soon as he could. It was held, that though a man doth a lawful thing, yet, if any damage do thereby befall another, he shall answer for it, if he could have avoided it, as if a man lop a tree, and the boughs fall upon another, *ipso invito*, yet an action lies. If I am building my own house, and a piece of timber falls on my neighbor's house and breaks it, an action lies. If a man assault me, and I lift up my staff to defend myself, and in lifting it up hit another, an action lies, and yet, I did a lawful thing, and the reason of all these cases is, because he that is damaged ought to be recompensed. This common law, and law of nature, has never been overruled, or abrogated. We have no right, or power, to disregard it. If this rule applies to the case before us, our decision should be in harmony with it. We cannot, because we find cases in the books, which, reasoning from some supposed analogy, would seem to justify us in applying another rule to this case, ignore, or hold for naught the elementary law, and the cases cited. If the cases and authority I have cited (*supra*) are authority, and the cases upon which the general term proceeded, are also authority, it is much better to see if they cannot be reconciled, than to hold the one for naught, and adopt the other, especially if the authorities overruled are directly analogous, while those adopted are not. I have found no difficulty in sustaining both as law, and clearly distinguishing between them. This view of the law, brings me to examine the point of distinguishing between this case, and that class of cases upon which the general term decided to grant a new trial. I entirely concur in most of the propositions laid down by the learned judge, in his able and elaborate opinion, which was adopted by a majority of this court,

but I am compelled to dissent from the appropriateness of the authorities cited to sustain those propositions.

Take, for instance, the following propositions laid down in that opinion : 1st. No person can be held liable for an injury to the person or property of another, unless he is proved to be in fault. 2d. Before liability will attach, it must be shown, either that the act was *unlawful*, or that it was performed in an *unlawful* manner. 3d. When the act itself is *unlawful*, a suit may be maintained by the party injured thereby, without showing negligence, or want of proper care. 4th. If, however, a person in the performance of a *lawful act*, cause an injury to the person or property of another, he is not liable, in the absence of all negligence.

I could adopt all these propositions, *except the last*, as perfectly consistent with the rule I have laid down ; at all events, they are not in conflict with that rule. The point is to determine what is lawful and unlawful. The difficulty with the opinion, is not so much with the propositions, as with the application to them, of a class of cases as authority to their support, which stands upon an entirely different principle. The first error, as I regard it, to be noticed in the very able opinion referred to, is the *assumption* that the act complained of was a *lawful act*, " on the part of the defendants," and therefore, that care and skill on their part in its performance, was a defense, and various cases are cited to prove that proposition. This is entirely true in regard to a large class of cases, but it is not universally true, and as to another class of cases, as we shall show, it is not true ; and the learned judge has failed to show the distinction between the two classes. It is true, as regards all that numerous class of cases where the party is acting *under legislative authority*, as in injuries occurring from the running of railroads ; by the acts of members of corporations, and others, who are authorized to grade and level streets, from which injuries

occur to adjoining land owners; and in all cases where power is conferred by the legislature, giving corporations authority to exercise the right of eminent domain. Such are the cases cited in *Radcliff's Executors* v. *The Mayor of Brooklyn*, (4 *N. Y.* 204;) and the distinction I have referred to, is expressly recognized in that case; and the ground of the distinction, is, as was said by Lord Kenyon, in *Governor &c.* v. *Meredith*, (4 *T. R.* 796,) that "where the legislature has authorized the act, though some individuals do suffer inconvenience or injury thereby, the interests of individuals must give way to the accommodation of the public." This is the universal rule, unless the party or officer by whose act the injury is inflicted, exceeds his authority; but this distinction is not noticed in the opinion I have referred to. But the contrary rule of law is just as well established; that if a private individual or corporation inflict an injury upon the adjoining land owner, they are liable for all damages consequent upon their acts, irrespective of the question of *negligence*, or want of care and skill in constructing them.

This same rule was held in the more recent case of *Bellinger* v. *The N. Y. Central R. R. Company*, (23 *N. Y.* 42.) Denio, J., who delivered the unanimous opinion of the court in that case, says, at page 48: "*That point* was conclusively adjudged in the case of *Radcliff* v. *The Mayor of Brooklyn*," &c. (*supra ;*) and he adds: ".I might leave *that point* to stand upon that precedent, but (he further adds,) *I think it may readily be shown that there is no well considered case having a contrary tendency.*" In looking at the case of *Radcliff* v. *The Mayor &c.*, cited by this distinguished judge, at page 199, the cases of *Hay* v. *Cohoes Co.*, and *Tremain* v. *The Same*, and the case of *Lambert* v. *Bessy*, cited from Sir Thomas Raymond, are the authorities cited by him upon which the principle is sustained. So far as the proposition in the opinion of the learned judge, at general term in this case, is applied to cases in

which the party is acting under legislative authority, it is sound, as to such cases; but not applicable to this, for the cases make the distinction, that in the performance of a *lawful act*, if an injury is caused to the person or property of another, he is not liable, in the absence of all negligence; but it goes no further; and *that* is not at all *this case*.

The act complained of was performed under no legislative license, but alone upon the private enterprise of the defendants; nor can it be true that the casting of this boiler and fixtures upon the premises of the plaintiff was a *lawful act*. It may not be denied that the *manufacture of paper* by the defendants, upon their own premises, by steam or other power, is a lawful act; but this act is not complained of; it was not this *lawful* act that occasioned the injury; it was the unlawful act of directly thrusting this boiler upon the plaintiff's premises, to the destruction of his property, that is complained of. Their acts were lawful while confined upon their own domain; but the means by which it was prosecuted was hazardous. The danger consequent upon using this machinery, at law, was not the plaintiff's hazard, but their own. They put the dangerous machinery in motion; and the moment they entered upon the plaintiff's quiet and peaceable possession with it, and destroyed his rightful possession of his own property, by a direct and immediate injury thereto, their act became *an unlawful* one; and they are responsible for its consequences, or, in the language of *Puffendorff*, "the owner ought either *not* to keep such creatures; or carefully to restrain them from doing mischief;" or, in the language of the cited cases, "the law regards not so much the *intent* of the actor, as it does the loss and damage of the sufferer. It was the defendants who put this dangerous creature in in motion." This view, then, brings the case within the proposition laid down by the learned judge at general

*Losee v. Buchanan.*

term, which will create a liability—"*it was the performance of an unlawful act.*"

A still later case in the Court of Appeals, repeats the rule that I have insisted is the true rule, applicable to this case. (*Pixley* v. *Clark*, 35 *N. Y.* 520, &c.) That action was to recover damages against the defendant, consequent upon building a mill-dam on his own land, by reason of which the plaintiff's land was injured, not by being overflowed by the water in the dam, but by percolation of water through the plaintiff's land, by which it was saturated and rendered worthless. The defendant showed himself a riparian proprietor ; that he built the dam on his own land ; and did not overflow the plaintiff's ; and that he built his dam with care and skill. The cases where care and skill are a defense, were discussed in that case ; but the court said, in answer to this argument, " it is not true then, that the defendants must have ' carelessly' or ' unnecessarily' injured the plaintiff, to enable him to sustain this action." They say, however, " the rule is different where one acts *under authority of law*." This is an important distinction ; it is not at all noticed in the opinion given at the general term. The court, in the last cited case, further says : " The act of the defendants was *lawful* in building their *dam*, so long as they did not injure their neighbor's land ; but the moment they so interfered by their dam as to flow his land to his injury, the act was *unlawful*; and they cited as authority the cases cited *supra*.

It is with great deference, and certainly only with the desire to place this decision upon the true ground, that I further review the learned opinion at general term. The learned judge, to sustain this opinion, cited, as he says, the familiar examples : 1st. Of burning fallows. (29 *Barb.* 419. 22 *id.* 619. 8 *John.* 421.) In the first cited case, the decision turned upon the question as to the liability of the employer for his servant's act, and the recovery was set aside for some improper ruling of the judge, and the

question of negligence was not otherwise made a point in the case. So, too, in the second case, a recovery was set aside on the ground that the fire was communicated by an extraordinary wind. In the third cited case, there was no recovery. The injury in these cases was not direct, but remote, and this creates another distinction to be observed, that in cases where the injury is not direct, negligence must be proved. The case cited, of collisions on highways and on the sea, are also clearly distinguishable from this, in that, in such cases, each party has equal rights to the same enjoyment of the highway or of navigation, and *negligence* is necessary, therefore, to put one party in the wrong; not so in the case before us, where the defendant had no right on the plaintiff's property. In the case cited from 3 *East*, 593, of collision on the highway, Lord Ellenborough remarked: "If I put in motion a dangerous thing, as, if I let loose a dangerous animal, and leave the hazard to what may happen, and mischief ensue to any person, I am answerable in trespass;" which action formerly only lay for immediate and direct injuries. Two cases are then cited, (5 *Bosw.* 576, *and* 2 *E. D. Smith*, 413,) which the learned judge thinks quite analogous to this. The first is an action for negligence by a railroad company, which we have already shown belongs to cases where the party is acting under authority of law, and the second is a collision upon a highway, which we have just shown to be clearly distinguishable from the present. I have examined, with some care, the other cases cited in that opinion, and supposed by analogy to be controlling. I find them, however, to come either within the classes of cases which I have attempted to distinguish from this, or else I have failed to discover their application. Take the case cited from *Lalor's Supplement*, 193. The principle laid down in that case is, that no liability results from the commission of an act arising from inevitable accident; or which ordinary human care and foresight are unable to guard against.

We look in vain for analogy between that case and the present. Surely it was not impossible for the defendants to have avoided the injury, in this case. It was possible for human care to have kept this boiler from being used; it was not put there by inevitable accident, or against their will; all that case states, beyond this, is that under the special circumstances of that case, and of the charge of the judge, the jury found the defendant not in fault. No question of law was settled in the case cited.

I have dwelt upon this point at this unusual length, only because I am satisfied that this court erred in ordering a new trial; and because in a later case, decided in the court of highest authority, it seems to be so held. If, however, my brethren adhere to their former ruling, I must, with due deference for the present, though against my judgment, hold the law of the case on this point, to be as they have decided, having placed myself according to my views in the case, fully upon record.

I proceed, then, to examine some of the other exceptions taken by the plaintiff on the last trial. The defendant Buchanan, at the end of the testimony, asked the court to charge the jury, that he was not liable for any negligence or unskillfulness on the part of "the Saratoga Paper Company," or on account of the manufacturers of the boiler, and the court so charged the jury, and the plaintiff excepted. Whether or not, at law, negligence is necessary to be shown, to sustain the action, or is proper as a defense to it, I regard this ruling of the learned judge to be manifest error. Since the case of *Phelps* v. *Wait*, (30 *N. Y.* 78,) we are not permitted to question the rule, that a joint action will lie against principal and agent. Whether the act of the agent be in the absence of the principal, or the principal is a corporation that can only act by its agents, is not material. It is not possible to conceive of any act that a corporation can perform, to make itself liable, unaided by its agents. It has neither body nor mind, (its absence of

a soul has long since been asserted and acknowledged.) It cannot put itself in motion to the injury of anybody. If injury accrues to any one by its action, it must be because its action is induced and directed by its agents. It cannot, then, be a sound proposition to hold, in a case where an injury done by a corporation was occasioned by the negligence or unskillfulness of the agent who put the corpora tion in motion, that the *inanimate corporation*, and *not* the *controlling agent*, is liable. Had there been no evidence of the agency of Buchanan, it was properly the duty of the court so to hold; but when there is evidence, and strong evidence, so that a question remains for the jury, the error is clear; it virtually holds that an agent is not liable for an act performed by his own negligence; and I think it a still greater fallacy to hold that the principal agents may escape liability if the injury occurs at a time when their sub-agent or deputy, whom they employ to conduct their affairs, happens to be in charge; or that, in such case, the corporation *only* is liable. We must look at this charge or ruling of the learned judge in the light of the facts of the case, as they appeared when the decision was made in the hearing of the jury. It was then in evidence, that the defendant Buchanan was one of the three directors of this corporation; that he was a stockholder of the company; that he and his co-defendant Bullard, had had the control, management and direction of the manufacture of paper, by means of the boiler that exploded; that Buchanan was an officer of the company; that the boiler whose explosion occasioned the injury, as to size and form, and material, was ordered and directed by him; and that it was of larger dimensions than any ever before known; there was much evidence, and by some experts in the science, to show that the explosion was occasioned by the extraordinary size of the boiler; that he assisted or directed its being put in, and gave directions as to its operation; that he had experience as a paper maker, and in the use of

Losee *v.* Buchanan.

boilers, and that he had some knowledge of their defective character before they were put in. To hold, in general terms, as matter of law, that he was not liable for negligence or unskillfulness, on the part of the "paper company," when the jury might have found from the evidence above alluded to, that the unskillfulness or negligence of the paper company was by reason of his act, is surely error.

If it were possible that unskillfulness or negligence could be committed by the corporation, not directed by its agents, the rule held might be plausible. It was for the jury to say whether the act was induced, directed or occasioned by the act of this particular agent, for agent he certainly was. I do not find anything in the subsequent charge that nullifies, destroys or explains this ruling.

The defendant then requested the court to charge some ten various propositions, (and this seems to include all of the defendants,) which the court charged as requested, and to which this plaintiff excepted.

I now propose to notice the *last only.* I may premise, by saying, that one Goddard was the engineer of the defendants, who had the immediate charge of the boiler which occasioned the injury.

The tenth proposition which the defendants asked the judge to charge, was as follows: "That if the jury found from the evidence, that Goddard came to the conclusion that to reduce the pressure from 120 to 110 (pounds to the square inch) would render the 'use of the boilers prudent and safe, and communicated that idea to Bullard, he (Bullard) was not liable." This proposition the court charged.

Unless we can look elsewhere than to this proposition for some explanation or modification of the ruling of the learned judge, it is also clearly error. There had been evidence then given in the case, tending to show negligence and want of skill on the part of the defendant Bullard, as well as of his knowledge of the dangers to be anticipated from the boiler in question; all of which evi-

dence it was proper that the jury should consider, as to the fixing negligence upon *him*, Bullard; but this proposition, in its terms, as charged, would take from the jury that consideration, and entirely exonerate Bullard from all want of care and skill in all else that he had done, if the jury should believe that Goddard had told him it would be safe to reduce the pressure ten degrees. The proposition does not even require that Bullard should have believed what Goddard told him. Indeed he may have disbelived Goddard; he may have had other actual knowledge of danger; his own carelessness, in other respects, might have satisfied a jury of his liability; and yet the proposition exempts him from all liability *if Goddard told him* that, in his opinion, it would be safe if the pressure was reduced to 110.

A party liable for negligence on his own account, cannot, by such an expedient, create a defense for himself, by obtaining an expressed opinion from his fellow employee. *Good* defenses, I think, are not quite so cheap as this.

As a defense of this tenth proposition, however, it is claimed that it should be read in connection with the ninth or next preceding proposition in the following words: "That if Goddard told Bullard that it would be prudent to run them (the boilers) at 110, and if Bullard *believed that*, and acted upon it, then he was not liable." The only difference between these propositions, then, is this, that by the ninth proposition the judge charged that if Bullard believed Goddard, then he was not liable. I think this was equally error with the other. Bullard's whole conduct, in all that he did, was to be judged of by the jury. The question was whether, in their opinion his *acts*, showed him guilty of negligence or want of skill; not whether he believed what Goddard said, and if he did, that all other acts would be excused.

Besides, these propositions were several and separate; they were so ruled upon; were short, clear and distinct;

Losee *v.* Buchanan.

could be easily comprehended and understood by the jury; and were clearly ruled upon by the judge, and if in themselves erroneous, they were calculated to mislead, and may have misled the jury.

It is also urged by the defendants, that these propositions are to be considered in connection with the subsequent charge of the judge at the folios named in the case, as follows:

1st. If you come to the conclusion that the explosion was produced by either or all of these circumstances, that is, all the defendants' acts, and conduct, and knowledge, and that the defendants had knowledge of the facts, then they are chargeable with the damage the plaintiff has sustained.

2d. Or, if you should believe that the indications of weakness (of the boiler) were such as to require the foreman to stop the boiler and inquire what the defect was, but that he did not do so, then you have a right to say that the defendants are liable for *his* acts.

3d. And you have a right to say whether Bullard was chargeable with the use of that boiler or not, after Goddard had told him it was not prudent to use it at over 110.

The first of these latter propositions I regard as sound. It is found, however, in the middle of a long charge; it refers to many of the circumstances claimed to be negligence on the part of the defendants; but does it follow that a jury, who had previously been erroneously instructed upon a short and distinct proposition, which they must have comprehended and understood, could or did, in the midst of a long charge, apply this sound and qualifying proposition to the prior unsound one? And if the two propositions are in conflict, is it not more probable that the minds of the jury were confused thereby, than that they had the power to apply, and did apply, the proper qualifications? The second and third of these qualifying propositions in the charge, I regard also as sound, and can

only apply to them the same remarks as to their effect upon the jury, as I have to the first.

There is one other point in the ruling of the learned judge on the trial, which I think was error. The plaintiff requested him to charge, "that the defendants cannot excuse or justify themselves in the use of the boiler in question, on the ground that the same was purchased of reputable manufacturers." Added to this proposition, the counsel gave reasons at some length, but they do not change the effect of the proposition. The judge refused so to charge, and the plaintiff excepted. This was a proper request to be made; because the defendants had been permitted to prove that the boilers had been manufactured by men of reputation and skill; and this was doubtless proper evidence to be considered by the jury, as tending to show care on the part of the defendants; but it had also been proved, to rebut this, that the size, form and character, and material of the boilers had been directed and ordered by the defendants. If the jury should believe this last evidence, then the manufacturers had no responsibility as to the character of the boilers; and their character as manufacturers was not in question, and had no influence or weight to be considered; for they built them as they were ordered by the defendants; and yet, the charge of the learned judge, in effect, was, that the purchase of these boilers from manufacturers of high reputation, was an excuse or justification to the defendants in the use of these boilers. This, surely, was error.

If I am right in my views as to any one of these propositions that I have discussed, there should be a reversal of the judgment, and a new trial ordered, with costs to abide the event. If my brethren should hold to my individual views upon the first proposition, based upon later and more applicable views of the law in the Court of Appeals, then, upon that ground alone, the judgment should be reversed. I have discussed the other propositions upon

the assumption that they would adhere to their former opinion, that negligence is to be proved against the defendants to entitle the plaintiff to recover; or that, at all events, care and skill proved by the defendants, constitute a justification and defense. Upon the whole case, whether the former opinion be sustained or not, I think a new trial should be ordered.

The majority of the court concurred with Justice POTTER in granting a new trial, upon the grounds last discussed; but they did not concur with him that the defendants were liable without proof of negligence.

New trial granted.

