RADCLIFF'S EXECUTORS vs. THE MAYOR, &c. OF BROOKLYN.

Where a municipal corporation under a rightful authority contained in its charter grades and levels a street, an action on the case will not lie by an adjoining owner, whose lands are not actually taken, for consequential damages to his premises, there being no want of care or skill in the execution of the      ' no provision in the charter for the payment of damages of that kind.

The corporation of the city of Brooklyn, regularly laid out and opened a street and

Radcliff's Executors *v.* Mayor, &c. of Brooklyn.

[196] thereby acquired title to the land over which it passed. Afterward, they proceeded to grade the street, in order to bring it into public use, and in so doing removed a high bank which constituted a natural support to the premises of an adjoining owner, so that a portion of his land fell. There was no allegation of malice, or want of care or skill. *Held*, that the adjacent owner could not maintain an action on the case for the damages sustained by him.

A law which authorizes the taking of private property for public use, is not unconstitutional because it omits to provide compensation for those who, although their property is not taken, suffer indirect or consequential damage.

An act done under a lawful authority, if done in a proper manner, will not subject the party doing it to an action for the consequences, whatever they may be. *Per* Bronson, C. J.

Nor will a man be answerable for the consequences of enjoying his own property in the way such property is usually enjoyed, unless an injury results to another from the want of proper care or skill on his part. *Per* Bronson, C. J.

But an action will lie where a man goes beyond the legitimate use of his own property; where he enters or casts any thing upon the land of another; where he diverts a stream of water from his neighbor's land, without having title to any thing more than the usufruct; or where he uses his own property in such a negligent and improper manner as to cause injury to others.

The doctrine that a man may for a lawful purpose dig in his own soil so near to the land of another, as to unsettle the foundation of a building thereon, without being liable to an action for the injury, reaffirmed.

And *per* Bronson, J. a man may also, without being liable to an action, dig so near the premises of another, that the soil *without any superincumbent weight* is precipitated into the pit. The *dicta* to the contrary in *Rolle's Ab. Trespass*, I. *pl.* 1; and of Chancellor Walworth in 4 *Paige*, 169, questioned.

The executors of the late Peter W. Radcliff brought an action on the case in the supreme court against the Mayor and Common Council of the city of Brooklyn. The declaration alledged that the plaintiffs' testator was seised of a lot of land in Brooklyn, with a dwelling house, out houses and garden thereon, adjacent to the East River but a considerable distance above it, which were sustained by a natural bank having a gradual descent to the river; that the defendants, on the 11th of May, 1838, wrongfully dug away the said natural bank, whereby the premises were undermined, and a part of the inclosed ground, together with the shrubbery, fixtures, fences, &c. fell, and were wholly lost to the said testator, and whereby also he was put to great expense in endeavoring to restore the premises, &c.

The defendants pleaded that before the commission of the

[197] alledged grievances, Furman-street, in the city of Brooklyn, had been lawfully laid out and opened, the east line of which ran along and adjacent to said premises; that the defendants as a municipal corporation, by virtue of the powers conferred on them by law, took regular and legal proceedings for the grading and levelling of said street; that upon such grading and levelling, the plaintiffs' testator neglected to uphold his said premises which lay above the grade of the street, and a portion of the premises fell, &c. which are the same grievances, &c. The plea also denied all negligence or want of care in the execution of the work.

The plaintiffs replied that at the time of committing the grievances, Furman-street had not been in fact laid out and opened, so as to be used as a street or highway, nor had the same been so used, nor had the ground adjoining the premises, being the said bank or natural support, been interfered with, dug away or disturbed. To this replication the defendants demurred, and the plaintiffs joined in demurrer. The supreme court sitting in the first district, after argument of the demurrer gave judgment in favor of the defendants, and the plaintiffs appealed to this court.

*A. H. Dana*, for appellants.

*H. C. Murphy*, for respondents.

BRONSON, Ch. J. The common council of the city of Brooklyn has ample authority to lay out, open, grade, level and pave streets within the city. When lands are taken for a street, the owner is to be paid his damages, to be assessed by commissioners. But there is no provision for paying consequential damages, or such as may result to persons whose lands are not taken. (*Stat.* 1833, *p.* 499, §§ 1, 2, 16; *id.* 1838, *p.* 119, §§ 1, 2.) Such is my construction of the statutes touching the question.

Furman-street lying west of and adjoining the testator's premises, had been laid out prior to the digging of which the plaintiffs complain; but it had not then been opened or used as

[198] a highway. The digging was done in the site of the street for the purpose of grading and levelling the same for public use. There was no excavation or any other act done by the defendants in or upon the testator's land. But in consequence of digging away the bank in the site of the street, which was a natural support of the testator's land, a portion of his premises fell into the street, and he suffered damage. There is no charge that the defendants acted maliciously; nor do the pleadings impute to them any want of skill or care in doing the work. The defendants are a public corporation; and the act in question was done for the benefit of the public, and under ample authority, if the legislature had power to grant the authority, without providing for the payment of such consequential damages as have fallen upon the testator. Our constitution provides that private property shall not be taken for public use without just compensation. But I am not aware that this, or any similar provision in the constitutions of other states, has ever been held applicable to a case like this. Although the testator's property has suffered damage, I find no precedent for saying that it has been "taken for public use," within the meaning of the constitution.

This short view is enough, perhaps, to dispose of the case. But the wide range of discussion at the bar makes it proper to consider the matter more at large. As no question has been made on that subject, we must assume that the defendants had acquired the title to the lands in the site of the street, in the forms prescribed by law. In levelling and grading the street, they were at work in their own land, doing a lawful act for a lawful purpose. They did not touch the testator's property; and the question is, whether the damage which resulted to him in consequence of grading the street, must not be regarded as *damnum absque injuria.* The maxim *sic utere tuo ut alienum non lædas*, is not of universal application; for, as a general rule, a man who exercises proper care and skill may do what he will with his own property. He may not, however, under color of enjoying his own, set up a nuisance which deprives another of [199] the enjoyment of his property. Nor can he rightfully

enter or cast any thing on the land of another, unless he have a license from the owner, or an authority in law for doing the act. And the absence of a bad motive will not save him from an action. Thus, if one having a hedge on his own land adjoining another's close cut the thorns, and they fall against his will, on his neighbor's land, from which he removes them as soon as possible, he may be treated as a trespasser. And if he lop a tree, and the boughs fall against his will on the land of another; or if in building his house a piece of timber fall on the house of his neighbor ; or if, through fear of his life by reason of threats, he enter the house of another and carry away his property ; in all these cases an action lies. (*Lambert* v. *Bessey*, *T. Raymond's Rep.* 421.) So, too, if in blasting rocks for the lawful purpose of making a canal in his own land, fragments of the rock fall on the house or land of his neighbor, an action will lie. (*Hay* v. *The Cohoes Company*, and *Tremain* v. *The Same*, 2 *Comst.* 159, 163.) Nearly allied to this is the common case of building a dam in one's own land, which throws back the water on the land or machinery of one higher up the stream ; which is an actionable injury. And one can not justify placing a spout on his house, which throws the water on the land of his neighbor. And though a man may use the water of a stream while it is passing through his land, he can not rightfully divert the water from the land of another lower down the stream ; nor can the water be taken to supply a city or town, without making compensation to those who are thus deprived of its use. (*Gardner* v. *Village of Newburgh*, 2 *John. Ch.* 162.) There is another class of cases of a somewhat different character, where a man must answer for the consequences of an act lawful in itself, because it was done in so negligent or unskilful a manner as to cause an injury to another. *Vaughan* v. *Menlove*, (3 *Bing. N. C.* 468,) is a strong example of the kind. The defendant was held liable for constructing a hay-rick on the extremity of his land in so negligent a manner that spontaneous ignition followed, and the plaintiff's cottage was destroyed. And where public officers, having authority to construct and repair streets, make a culvert to pass a stream of water in so unskilful and im- [200]

proper a manner as to cause an injury to another by the choking of the culvert, they must answer in damages. *Rochester White Lead Company* v. *The City of Rochester*, (3 *Comst.* 463.) These cases are enough to exemplify the rule that a man must so exercise a lawful authority, and so enjoy his own property, as not to injure the property of another.

But a man may do many things under a lawful authority, or in his own land, which may result in an injury to the property of others, without being answerable for the consequences. Indeed, an act done under lawful authority, if done in a proper manner, can never subject the party to an action, whatever consequences may follow. Nor will a man be answerable for the consequences of enjoying his own property in the way such property is usually enjoyed, unless an injury has resulted to another from the want of proper care or skill on his part. In the cases already put, where an action will lie, the party either went beyond the enjoyment of his own property, and entered or cast something on the land of his neighbor; or he diverted a stream of water from the land of his neighbor, without having a title to any thing more than the usufruct; or else he used his own property in such a negligent and improper manner as to cause an injury to another.

Let us now see what a man may do in the enjoyment of his own property, without being answerable to others for consequential damages—always assuming that he acts with proper care and skill. He may set fire to his fallow-ground; and though the fire run into and burn the woodland of his neighbor, no action will lie. (*Clarke* v. *Foot*, 8 *John.* 421.) He may open and work a coal mine in his own land, though it injure the house which another has built at the extremity of his land. (*Patridge* v. *Scott*, 3 *Mees. & Welsb.* 220.) And he may do the same thing, though it cut off an underground stream of water which before supplied his neighbor's well, and leave the well dry. (*Acton* v. *Blundell*, 12 *id.* 324.) He may build on his own land though it stop the lights of his neighbor; (*Parker* v. *Foot*, 19 *Wend.* 309;) [201] and even though he build for the very purpose of stopping the lights. (*Mahan* v. *Brown*, 13 *id.* 261.) He may pull down

his own house, though the adjoining house fall for the want of the support which it before had; and he may do it without shoring up the adjoining house—that being the business of the owner. (*Peyton* v. *Mayor and Commonalty of London*, 9 *B. & C.* 725.) He may pull down his own wall, though the vaults of his neighbor be thereby destroyed. (*Chadwick* v. *Trower*, 6 *Bing. N. C.* 1.) He may build a house and make cellars upon his soil, whereby a house in the adjoining soil falls down. (*Com. Dig. Action on the Case for Nuisance, C.*) He may dig in his own land, though the house which his neighbor has previously erected at the extremity of his land be thereby undermined and fall into the pit. (2 *Rolle's Ab. Trespass I. pl.* 1; *Wyatt* v. *Harrison*, 3 *B. & Ad.* 871.) In *Panton* v. *Holland*, (17 *John.* 92,) the defendant, for the purpose of laying the foundation of a house in his own land, dug some distance below the foundation of the plaintiff's house in the contiguous lot, whereby the walls of the plaintiff's house were cracked, and the house was otherwise injured; and it was held that no action would lie. In *Lasala* v. *Holbrook*, (4 *Paige*,) 169, the plaintiffs were the owners of a church, built within six feet of the line of their lot, and the defendant, for the purpose of building in his adjoining lot, was sinking the foundation for his building sixteen feet below the natural surface of the ground, and ten feet below the foundation of the church, whereby the foundation of the church was greatly endangered; and yet, an injunction to restrain the excavation, which had been granted by a master, was dissolved by the chancellor, on the ground that the defendant was exercising a lawful right. In *Thurston* v. *Hancock*, (12 *Mass.* 220,) the plaintiff had built a valuable house on Beacon hill, in the city of Boston, one side of the house being within two feet of the side of his land, and had taken the precaution to sink his foundation fifteen feet below the ancient surface of the ground. Seven years afterwards the defendant commenced digging and carrying away the earth from his adjoining land, and dug to the depth of from thirty to forty-five feet below the natural surface of the ground; by reason of which the foundation of [202] the plaintiff's house was rendered insecure, and he was obliged

to take the house down. And yet, it was held that no action lay for the injury to the house. In *Dodd* v. *Holme*, (1 *Ad. & Ellis*, 493,) the defendant was held liable on the ground that the injury complained of was occasioned by his negligence.

It is proper here to notice a distinction which is stated by Rolle in his Abridgment, at the place already cited. He first gives the judgment of the court in *Wilde* v. *Minsterley*, to the effect, that if A. erect a house on the confines of his land next adjoining the land of B., and B. afterwards digs his land so near the foundation of A.'s house, (but on no part of his land,) that thereby the foundation, and the house itself, fall into the pit, yet no action lies by A. against B., because it was A.'s own fault that he built his house so near to B.'s land ; for he, by his act, cannot hinder B. from making the best use of his own land that he can. Rolle then adds—But it seems that a man who has land next adjoining my land can not dig his land so near mine that thereby my land shall go into the pit ; and, therefore, if an action had been brought for that it would lie. This distinction is noticed and approved in *Thurston* v. *Hancock*, (12 *Mass.* 220 ;) and it was also noticed by Lord Tenterden, in *Wyatt* v. *Harrison*, (3 *B. & Ad.* 871,) but without expressing any opinion on the point. The *dictum* of Rolle was not mentioned in *Panton* v. *Holland*, (17 *John.* 92,) although his abridgment was cited at the page in question. But in *Lasala* v. *Holbrook*, (4 *Paige*, 169,) the *dictum* was mentioned and approved by the chancellor. He admits and decides, that I can not, by erecting a building near the extremity of my own land, deprive the adjoining owner of the right of digging in his own soil for a legitimate purpose, even though my house be thereby ruined. But he says, " I have a natural right to the use of my land, in the situation in which it was placed by nature, surrounded and protected by the soil of the adjacent lots ; and the owners of those lots will not be permitted to destroy my land by removing this natural support or barrier." Although this was not the point [203] in judgment, the opinion of the chancellor is entitled to great weight; and the reasoning is not without some force, that so long as my land remains in its natural state, I ought

not to be deprived of the use of it in that state, by any act of my neighbor, though done in his own soil. But still I think the reasoning unsound—especially in reference to property in cities and large towns. If the doctrine were carried out to its legitimate consequences, it would often deprive men of the whole beneficial use of their property. An unimproved lot of land in the city of Brooklyn would be worth little or nothing to the owner, unless he were allowed to dig in it for the purpose of building; and if he may not dig because it will remove the natural support of his neighbor's soil, he has but a nominal right to his property, which can only be made good by negotiation and compact with his neighbor. A city could never be built under such a doctrine. I think the law has superseded the necessity for negotiation, by giving every man such a title to his own land that he may use it for all the purposes to which such lands are usually applied, without being answerable for consequences; provided he exercises proper care and skill to prevent any unnecessary injury to the adjoining land-owner. The saying of Rolle may have been a wise one in his day; but it is not well adapted to our times.

The case before us seems to fall within the principle that a man may enjoy his land in the way such property is usually enjoyed, without being answerable for the indirect or consequential damages which may be sustained by an adjoining land-owner. But if that be a doubtful position, there is a class of cases directly on the point in judgment, which hold that persons acting under an authority conferred by the legislature to grade, level and improve streets and highways, if they exercise proper care and skill, are not answerable for the consequential damages which may be sustained by those who own lands bounded by the street or highway. And this is so whether the damage results either from cutting down or raising the street; and although the grade of the street had been before established, and the adjoining land-owners had erected buildings with reference to such grade. As this doctrine has often been asserted, and has never been denied in any well considered judgment, [204] I shall do little more than refer to some of the cases where it

may be found. (*Governor, &c. of the Cast Plate Manufacturers* v. *Meredeth,* 4 *T. R.* 794 ; *Bolton* v. *Crowther,* 2 *B. & C.* 703 ; *Graves* v. *Otis,* 2 *Hill,* 466 ; *Wilson* v. *Mayor of New-York,* 1 *Denio,* 595 ; *Benedict* v. *Goit,* 3 *Barb.* 459 ; *Green* v. *The Borough of Reading,* 9 *Watts,* 382 ; *Henry* v. *Pittsburgh & Alleghany Bridge Company,* 8 *Watts &. Serg.* 85 ; *Goszler* v. *Corporation of Georgetown,* 6 *Wheat.* 593 ; *Matter of Furman-street,* 17 *Wend.* 667.) If the case of *Leader* v. *Moxon,* (3 *Wils.* 461, *and* 2 *W. Black,* 924,) must be regarded as laying down a different doctrine, it can not be supported. But the decision seems to have gone on other grounds, and such as are quite consistent with the current of authority on this subject. According to the report in *Wilson,* Gould, J. spoke of the paving commissioners as having misdemeaned themselves in their trust ; and Blackstone, J. said they had acted " arbitrarily and tyrannically ;" and according to the report in *Blackstone,* the whole court held, " that the commissioners had grossly exceeded their powers." They were of course answerable to those who had been injured. In *Goodloe* v. *The City of Cincinnati,* (4 *Ohio,* 500,) the declaration, to which there was a demurrer, charged that the defendants " maliciously and without cause," dug up and destroyed the street, to the plaintiff's injury ; and the principal question seems to have been, whether the corporation, or those who acted under its authority in doing the work, should answer for the wrong. The court said, " when a corporation acts illegally and maliciously, we conceive that it ought to be made directly responsible." That is far enough from proving anything against those who have acted legally and without malice. If the case of *McCombs* v. *The Town Council of Akron,* (15 *Ohio,* 474,) to which we are referred, goes on the ground that the corporation, though it had ample authority to grade the street, did it in an illegal and improper manner, and thereby caused an injury to the plaintiff's property, the decision is well enough. But if the doctrine of the case be, that the corporation was answerable, because it was [205] a corporation, and when a natural person acting under the like authority, would not have been liable, (see dissenting opinion of Birchard, J.) the decision is entitled to no respect

whatever.  If the court intended to hold, that persons, whether artificial or natural, were answerable for the damages which might result to an adjoining land-owner from the grading of a street, though the act was done under ample authority, and in a proper manner, the case is in conflict with many decisions, and can not be law beyond the state of Ohio.  The case of *Rhodes* v. *The City of Cleveland*, (10 *Ohio*, 159,) calls for no additional remark.

The case of *Fletcher* v. *The Auburn and Syracuse Railroad Company*, (25 *Wend.* 462,) stands on the somewhat questionable ground, that the legislature did nothing more than to shield the railroad company from an indictment for the wrong which would otherwise have been done to the public by occupying the highway with their road, without giving the company any authority whatever, so far as related to the rights or property of individuals.  If the statute under which the defendants acted is constitutional, it is settled that they are not answerable to third persons, whatever damage they may have suffered.  Indeed, it is absurd to say, that public officers may be liable to an action for what they have done under lawful authority, and in a proper manner.  Private property can not be taken for public use without making just compensation to the owner ; and a law which authorizes the taking without providing for compensation, must be unconstitutional and void.  But laws which authorize the opening and improving of streets and highways, or the construction of other works of a public nature, have never been held void because they omitted to provide compensation for those who, though their property was not taken, suffered indirect or consequential damages.  The loss which they sustain has always been regarded as *damnum absque injuria.* The question was considered in *Callender* v. *Marsh*, (1 *Pick.* 430,) and although that case and the case of *Thurston* v. *Hancock,* (12 *Mass.* 220,) have to some extent been questioned in a dissenting opinion of Mr. Justice Story, (11 *Peters*, 638,) [206] and by Chancellor Kent, (2 *Kent*, 340, *note, 6th ed.*) I think the constitution does not apply where the damages are merely con-

sequential. Our general highway laws have never provided for the payment of such damages; and such also is, I believe, the fact in all the numerous cases where cities and villages in this state have been authorized to open and improve streets and highways. Such laws have never been thought unconstitutional; and no one can calculate the mischiefs which would ensue, should we now declare them void. There are many other laws which present the same general question.; but it will be enough to refer to one or two by way of illustration. The Albany Basin worked a serious injury to the owners of docks on the west side of the river, and yet, as the damage was not direct, but only consequential, the law which authorized the erection of the basin was held constitutional, although it did not provide for compensation to the dock owners. (*Lansing* v. *Smith*, 8 *Cowen*, 146.) This judgment was affirmed by the court of errors. (4 *Wend.* 9.) And a law which authorizes a new bridge near to and on the same line of travel with an existing toll bridge, and which in its consequences destroys the whole value of the old franchise, is constitutional, although it makes no provision for paying damages to the owners of the old bridge. (*Charles River Bridge* v. *Warren Bridge*, 11 *Peters*, 420.) Other illustrations might be added, but they can not be necessary.

If any one will take the trouble to reflect, he will find it a very common case, that the property of individuals suffers an indirect injury from the constructing of public works; and yet I find but a single instance of providing for the payment of damages in such a case. (*Brown* v. *City of Lowell*, 8 *Metc.* 172.) The opening of a new thoroughfare may often result in advancing the interest of one man or a class of men, and even one town, at the expense of another. The construction of the Erie Canal destroyed the business of hundreds of tavern-keepers and common carriers between Albany and Buffalo, and greatly de-[207] preciated the value of their property, and yet they got no compensation. And new villages sprung up on the line of the canal, at the expense of old ones on the former line of travel

Radcliff's Executors *v.* Mayor, &c. of Brooklyn.

and transportation.  Railroads destroy the business of stage proprietors, and yet no one has ever thought a railroad charter unconstitutional, because it gave no damages to stage owners. The Hudson river railroad will soon drive many fine steamboats from the river; but no one will think the charter void because it does not provide for the payment of damages to the boat owners.  A fort, jail, workshop, fever hospital, or lunatic asylum, erected by the government, may have the effect of reducing the value of a dwelling house in the immediate neighborhood; and yet no provision for compensating the owner of the house has ever been made in such a case.   Many other illustrations might be mentioned, but it cannot be necessary to enlarge.

The opening of a street in a city is not necessarily an injury to the adjoining land-owners.   On the contrary, it is in almost every instance a benefit to them.   The damage which they sometimes sustain, because the level of the street does not correspond with the level of their land, is usually more than compensated by the increased value which the property acquires from having a new front on a street.   In some instances the land-owner will suffer a heavy loss; and this case may, perhaps, be one of the number; but it is *damnum absque injuria*, and the owner must bear it.   He often gets the benefit for nothing, when the value of his land is increased by opening or improving a street or highway; and he must bear the burden in the less common case of a depreciation in value in consequence of the work.   It may be added, that when men buy and build in cities and villages, they usually take into consideration all those things which are likely to affect the value of their property, and particularly what will probably be done by way of opening and grading streets and avenues.

Whether in cases of this kind the legislature ought as a matter of equity, to provide for the payment of such damages as are merely consequential, we are not called upon to decide.   It is enough for us to say, that a law which makes no such [208] provision is not, for that reason, unconstitutional and void.

I am of opinion that the judgment of the supreme court is right, and should be affirmed.

Judgment affirmed.