## SUPREME COURT.

THE PEOPLE, &c., *ex rel.* JAMES MURTAUGH, agt. THE BOARD OF ASSESSORS OF THE CITY OF NEW YORK.

*New York city — Damages by change of grade of streets — Powers of assessors to alter lists — Mandamus.*

A person who, after the filing of the map changing the grade of a street, erects a building upon a lot fronting thereon, is not entitled to compensation for any damage sustained when the street is graded to conform with the new grade.

The board of assessors of the city of New York have power to alter or change the list of awards and assessments in cases of manifest error or mistake, even after the list has been advertised complete, and may do so of its own motion.

*First Department, General Term, January,* 1878.

*Before* DAVIS, *P. J.,* BRADY *and* INGALLS, *JJ.*

*William C. Whitney,* counsel to the corporation, for appellants.

*James A. Deering,* for respondent.

APPEAL from an order directing a peremptory *mandamus* to issue.

BRADY, *J.* — In the year 1868, the commissioners of Central park, pursuant to the authority vested in them by chapter 697 of the Laws of 1867, changed the grade of One Hundred and First street.

In 1868, the relator became the owner of the premises to which this proceeding applies.

In 1870 or 1871, the relator built five houses on the land which he had acquired, and on the original or the grade established prior to his purchase.

In 1875, the common council directed the street, from the

Ninth avenue to the Boulevard, to be regulated and graded in accordance with the change made as already stated.

In or about the month of May, 1877, the assessors made up an assessment list for the latter work, in which was included an allowance or award to the relator for damages to said eight houses on the front of his lots, by reason of said change of grade, of $3,350, and advertised the list for objections. The allowance for damages was made under the belief that the houses were erected before the grade of the street was changed. Upon advertising for objections, it was ascertained by the assessors that the eight houses in question were erected two years after the new grade was established, and they thereupon struck out the allowance to him, and, upon his further application, disallowed his claim for damages to said eight houses, the frame buildings and the lands.

The relator, thereupon, moved on his affidavit, sworn to the 24th day of August, 1877, for a peremptory writ of *mandamus* setting forth substantially the facts as above stated, and claiming that by reason of the change of grade he had been obliged to raise all of the buildings except the frame house on the rear of lot No. 43, which had been sunk below the grade and the first story rendered untenantable and worthless, and the ingress and egress from all of said buildings have been seriously inconvenienced and disturbed, all to his great loss and injury.

The motion was opposed on the affidavit of Mr. North, one of the assessors, that no damage or injury was done to the relator's lands or buildings by the change of grade of One Hundred and First street, but that any and all loss or expense suffered or incurred by the relator resulted from his own acts and negligence, and that the allowance first made to the relator was struck out and rescinded because made upon a mistake of the facts. The motion was granted, and, hence, this appeal.

The right of the relator to damages depended upon statutes authorizing an award thereof, and upon them only (*Radcliff*,

*Exr.*, agt. *The Mayor*, 4 *N. Y.*, 195), and there is no statute giving damages, or authorizing the award of damages, under the circumstances which signalize the relator's claim.

He built after the alterations of the grade, and having done so assumed, voluntarily, all the consequences of his act. He means, doubtless, to say, but does not in fact say, that he had no notice of the change and built "not knowing that a new grade was established for said street," but the filing of the map was notice (*act of* 1867, *chap.* 697, *sec.* 3, *supra*), and the presumptions are in favor of the regularity of the proceedings which resulted in that ceremony.

The damages awarded for the change of grade relate to the existing condition of the land when the alteration is declared, and not to such condition as may subsequently be established by the voluntary act of the owner (*Act of* 1867, *sec.* 3).

The language of the section applicable is as follows: "All damage to any land *or to any building or other structure existing at the time of the passage of this act* on any street, avenue, &c., shall be ascertained and paid in the manner specified in sections 3 and 4 of the act of 4th of March, 1852, chapter 52."

When the award was made by the board of assessors it was under the conviction that the houses had been erected prior to the change of the grade, and the error thus committed was subsequently corrected. The damages were allowed under the act of 1852 (*supra*) and 1867 (*supra*), and particularly under the provision of the act of 1852 which directs the assessors to "make a just and equitable award of the amount of such loss or damage to the owner or owners of such lands or tenements fronting on such street or avenues and opposite thereto and affected by such change of grade," and they were stricken out or disallowed under the provisions of the act of 1841, chapter 171, which directs the giving of notice of completion of the estimate and assessment by advertisement of that fact, and for objections and provides "and if after examining such objections, the commissioners or assessors shall not deem

it *proper to alter their assessment or having altered it there shall still be objections to the same, it shall be their duty to present such objections with the assessment to the court or persons authorized to confirm the same.*" The act of 1859, chapter 302, also provides that "the said board of assessors, or a majority thereof, *shall make all estimates and assessment,* give all notices, *receive and pass upon all objections* and certify to the common council in accordance with the existing laws relative to all such matters. The list is now, however, certified to the board of revision and correction (*Laws of* 1861, *chap.* 308) and that board possessed the power to correct such an error as that complained of, namely, the omission to make the award for damages which was the effect of disallowing what had been granted under, as shown, a misunderstanding of the facts (*Laws* 1872, *chap.* 580).

The act of 1841, however, in express terms, gives the assessors power to alter the assessment list, and this power of alteration is not confined to express objections by persons assessed or to whom awards are made but to any objection made by the assessors, which in justice ought to be corrected. It is not necessary that the objections be in writing and by persons affected by the assessment, to give the assessors power to undo a wrong inadvertently done in the exercise of their functions. The proposition seems to be too plain for argument. The counsel for the relator has shown much industry and ingenuity in the preparation of this appeal and has made the most of it, but in vain. There seems to be an imperfection in the law in this respect, namely, that by the filing of the map the new grade is established but it is not immediately incumbent upon the city to proceed with the alteration. The result is that the owner of the land must wait or having leveled or built up to the grade may then proceed with his building.

The order appealed from must, however, be reversed with ten dollars costs and the disbursements of this appeal.

DAVIS, P. J., and INGALLS, J., concurred.