IN THE MATTER OF THE APPLICATION OF THE NEW YORK, WEST SHORE AND BUFFALO RAILWAY COMPANY, APPELLANTS, TO ACQUIRE TITLE TO CERTAIN LANDS OF ELIZABETH L. CHRYSTIE AND OTHERS.

THE SAME, TO ACQUIRE TITLE TO CERTAIN LANDS OF ELIZABETH WALSH AND OTHERS.

*Taking of land for railroad purposes — measure of damages when access to a navigable stream is obstructed — report of the commissioners — when it may be reviewed by the court — what is not a waiver by the company of its right to appeal.*

A railroad company sought to acquire a right of way over lands under the waters of the Hudson river which had been granted by the State to the owners of the adjoining uplands, which were brickyards. The company took from one owner a strip about thirty feet wide and 1,900 feet long, containing about four and a-half acres; from the other a strip of the same width and about 883 feet long, containing about two acres. The west line of the strips was from 100 to 250 feet east of the brickyards, and the channel of the river was four or five hundred feet east of the proposed road. The construction of the road would damage the brickyards by obstructing the approach thereto from the river. Tramways could be constructed to and across the tracks, which were to be from one and a-half to three feet higher than the hearths of the kilns, to docks which could be constructed on the east of the railroad. The commissioners awarded to the owners and tenants of one of the pieces to be taken $46,729, and to the owners and tenants of the other $36,800.

*Held,* that the awards should be set aside as excessive.

*It seems,* that the proper measure of damages would be the expense of restoring the communication with the river, destroyed by the construction of the road.

In proceedings to take this land an order was made December 24, 1881, appointing commissioners to appraise the damages of the land owners, whose report was made and confirmed by the court on March 11, 1882. On June 30, 1882, the Court of Appeals reversed the order of December twenty-fourth. New proceedings were instituted and on August 16, 1882, new commissioners were appointed whose report was made November 18, 1882, and confirmed. On June twenty-second an order was made in the new proceedings, allowing the company to continue in possession, upon depositing the sum of $17,000 to secure the payment of any awards that might be made, and requiring it during the pendency of the proceedings to keep open a gap of sufficient width to permit the passage of vessels to and from the brickyards. After the report of the second set of commissioners was confirmed the company paid the amount of the award and closed the gap.

Upon the motion to dismiss an appeal taken by the company from the report:

*Held*, that the report was not a "second report" within the meaning of section 18 of chapter 140 of 1850, as amended by chapter 198 of 1876, making the second report of commissioners final and conclusive.

That this statute only refers to a second report made in the same proceedings, after the court has refused to confirm a prior report and has directed a new appraisal before the same or new commissioners.

That the company had not by paying the amount of the awards or closing the gap waived or lost its right to appeal.

APPEALS by the railroad company in the two above entitled proceedings from the reports of commissioners appointed to appraise the damages of the owners of lands sought to be taken for the purposes of a railroad, and from orders confirming the same.

*M. H. Hirschberg*, for the company, appellant.

*Tillotson & Kent*, for Elizabeth L. Christie, respondent.

*W. W. Badger*, for Adams & Lang, respondents.

*E. A. Brewster*, for Elizabeth Walsh and others, respondents.

DYKMAN, J.:

These cases are brought to us by appeal from the report of commissioners appointed to ascertain and appraise the compensation to be made for the land appropriated for the railroad, and also from the order confirming the same. The appeal is brought by the railroad company in both cases, and they were argued together, and it will be convenient to consider and determine them in the same way.

The property of these respondents is on the west bank of the Hudson river. Both have the same general features, and both contain material for the manufacture of brick. There are two brickyards on the Christie property, and one on the Walsh property, all in the possession of tenants. Both are on the river brink and the railroad runs through the river in their front about 300 feet from the west side of the yards in possession of Adams & Lang, and about 200 feet from the south end of the yard in possession of Grygs. The north-east corner of this yard touches the railroad line. The road-bed on the surface will be about thirty feet wide, and the top of the rails will be about three feet higher than the kiln hearths on these yards. The owner has a water grant for her front extending to the river

channel, about 400 feet east of the railroad, which runs through this water grant about 1,900 feet, and takes about four acres and a-half of the land under water.

The Walsh yard is immediately south of Christie about 110 feet from the railroad on the south end, and about 240 feet on the north end. There is also a water grant for this property extending to the channel, and the railroad runs over it about 883 feet, taking about two acres of the land. The top of the rail will be about one foot and a half higher than the kiln hearth on this yard. The channel is four or five hundred feet east of the railroad. Aside from the land under water the property of both these owners is left untouched and undisturbed by the railroad. The injuries to these pieces of property result from the obstruction of the approach to the brick yard, by the construction of the causeway to receive the tracks of the railway. Tramways from the yards to and across the railroad, and docks constructed outside, will re-establish communication with tide-water and navigation, and then the loading of brick on board of vessels, and the unloading of material for the use of the yards will go on as usual with only the slight addition to the length of land. No other injury will accrue to this property.

The commissioners awarded to the owners and mortgagees of the Chrystie property $40,729, and to the tenants, Adams and Lang, $6,000. They also awarded to the owners and mortgagees of the Walsh property $35,000 and to the tenants $1,800.

These awards are palpably excessive and unjust.

The protection against the appropriation of private property for public purposes without compensation, is the constitutional inhibition, and that provision is that private property shall not be taken for public use without just compensation. (Article 1, § 6.) Following this interdiction of the paramount law, the statute provides that in case a railroad corporation is unable to agree for the purchase of any real estate required for the purposes of its organization, it shall have the right to acquire title to the same in the manner prescribed. (2 R. S. [6th ed.], 523, § 14.)

These proceedings are instituted only to acquire title to land, and to entitle an owner to compensation there must be an actual taking of private property. Mere consequential damages do not confer the right. (*Radcliff* v. *Mayor of Brooklyn*, 4 N. Y., 195 ; *Lansing*

v. *Smith*, 4 Wend., 9; *Gould* v. *Hudson R. R. Co.*, 6 N. Y., 522; *Bellinger* v. *New York Central R. R.*, 23 id., 48.)

The underlying principle is that the property is not taken but only subjected to damages consequential on an act performed pursuant to sovereign authority. The construction of this railroad across the waters of the Hudson river, in front of these premises, was in pursuance of legislative authority.

It thus appears to be established that the construction of a railroad may be authorized by the legislature without requiring compensation to persons whose property has not been actually appropriated, and where only indirect and consequential damages have resulted. The mandate of the fundamental law is that private property shall not be taken for public use without just compensation, but where it is not taken in the full import of that word, there comes no compensation.

Let us see what has been actually taken from these land owners. Their property is on the river bank and they have in their immediate front a navigable river of water, which is a great public highway, over which they have a right of unobstructed passage. Their property was the dominant tenement, and the servitude was an easement in the river which is property within the meaning of the Constitution. (*Arnold* v. *Hudson R. R. Co.*, 55 N. Y., 661; *Story* v. *N. Y. Elevated R. R. Co.*, 11 Abb. N. C., 236.) This right, however, is held subject to the power of the legislature to regulate and control the use and occupation of the river. This railroad encroaches on and obstructs the easement, and so impairs the usefulness of the premises. This is an appropriation of property, and the compensation must be measured by its extent.

The causeway of the road is so constructed as to incompass the property of the respondents and leave them no access to the river, and the obstruction of the easement has that extent and no more. The usefulness of this property may, therefore, be brought back to the owners by a restoration of communication with the water navigation of the river.

The expense of such restoration seems, therefore, to measure fairly the compensation to be made to the owners of the upland, with some allowance for additional length of haul. The testimony in this case shows that tramways and docks to connect these brick yards with

tide water will cost but a small sum in comparison with the amounts awarded, and it appears plain that erroneous principles have been adopted by these commissioners in the assessment of the damages which they awarded. They are so excessive that we cannot permit them to stand.

A motion is also made to dismiss the appeal in both these cases with these facts for its foundation: On the 24th day of December, 1881, commissioners were appointed to appraise the compensation to be made to these same parties for this same property. They performed the duty and made a report which was confirmed by the court March 11, 1882.

The land owners refused to accept the awards, and the company deposited the money in a trust company and took possession of the land. On the 30th day of June, 1882, the order appointing the commissioners was reversed and the proceedings were dismissed by the Court of Appeals. Thus new proceedings were commenced to acquire title to these lands, and new commissioners of appraisement were appointed August 16, 1882. They performed their duties and made their report November 18, 1882, which is the report from which we now have these appeals. These reports were confirmed, and the money paid to the respective parties.

On the 22d day of June, 1882, after the commencement of the new proceedings, an order was made authorizing the company to continue in possession of the land on which the causeway was then in course of construction, during the pending of the proceedings. The sum of $17,000 was to remain on deposit with the trust company as security to the owners for the payment of any compensation to be awarded in such new proceedings. It was also further ordered that during the pendency of the proceedings the company should keep open a gap in the road of sufficient width to permit the passage of vessels to and from the brick-yard. This was done until the awards were paid, and then the gap was closed up.

The motion to dismiss is based on the ground that the report now under consideration is a second' report, and therefore final under the statute.

Our conclusion on this point is that this report is not within the limit or intention of the statute invoked. The provision is that, on the hearing of an appeal from the report of the commissioners,

" the court may direct a new appraisal before the same or new commissioners, in its discretion; the second report shall be final and conclusive on all the parties interested." (2 R. S. [6th ed.], 526, § 20; Laws of 1876, chap. 198.)

To fit the statute, therefore, the case must present a refusal to confirm a report and a direction of a new appraisal before the same or new commissioners; and all this must come to pass before the Supreme Court, at a General or Special Term, having the appeal in charge. It is the report under the new appraisal that is to be final and conclusive. Nothing of that kind has been transacted in this case. There has been no refusal of confirmation, and no direction for a new appraisal.

The commissioners, whose report we now have in charge on this appeal, were appointed in a new proceeding, instituted anew after the dismissal of the former proceedings, on an original petition presented for that purpose by the company; not on the motion of the court on appeal, as contemplated in the statute referred to. This ground for dismissal is therefore untenable.

Another ground insisted on for dismissal, is that the money awarded by the commissioners was voluntarily paid; and while it may be admitted as a principle that money paid freely and without mistake cannot be recovered in an action therefor, yet this money was paid in conformity with the order of the court and the provisions of the statute, and the payment cannot be deemed voluntary in any legal sense implied in this objection.

The appellants took no benefit by the awards or orders appealed from. They constituted a judgment against the company which was paid. They contained no provision beneficial to the company, from which benefit has been accepted. If right of possession resulted from the payment it was by operation of law. It is true the order contains direction for possession, and vacates all orders inconsistent therewith. But there was no order inconsistent with such possessions.

The closing of the gap in the causeway had no connection with the order appealed from, for it was neither closed or opened under its provisions. Besides this, the company acquired the title by the payment, and closed the gap in the exercise of a right, and not in acceptance of a favor. The right of appeal provided by the

statute cannot be foreclosed by a payment of the awards. The company could only obtain possession of this land after payment or ,deposit of the awards, and the statute plainly contemplates an appeal after such possession, because an appeal by others than the corporation will not be heard except on stipulation not to disturb such possession. (2 R. S. [6th ed.], 526, § 20.)

The motion to dismiss the appeal is therefore denied, with costs and disbursements.

The awards of the commissioners in both cases are set aside, and the orders confirming the same are reversed, with costs and disbursements, and new commissioners appointed to make a new appraisal.

BARNARD, P. J., concurred; PRATT, J., not sitting.

Motion to dismiss appeal denied, and award of commissioners and order confirming same vacated, with costs and disbursements, and new commissioners appointed.