(101 App. Div. 345.)

SCHWARZENBACH v. ELECTRIC WATER POWER CO. OF ONEONTA.

(Supreme Court, Appellate Division, Third Department.    January 4, 1905.)

1. LICENSE TO FLOOD LAND—SCOPE AND EFFECT.
    Plaintiff gave defendant an instrument granting "the privilege to erect a dam on [plaintiff's] land  *  *  *  and flood the same below the dam according to a sketch and measuring about 2.07 acres, for the sum of" $75.    Held, that the flooding of other land of plaintiff by the percolation of the water through or under such dam was not a necessary or natural consequence of the use of the privilege granted, and as appurtenant thereto, so as to relieve defendant from liability for such overflow.

2. FLOODING LAND—INJUNCTION—EQUITABLE JURISDICTION.
    Where the wrongful overflow of plaintiff's land is continuous, he may invoke the jurisdiction of a court of equity to restrain such overflow, and thus prevent a multiplicity of suits.
    Parker, P. J., and Smith, J., dissenting.

Appeal from Special Term, Otsego County.

Action by Arthur Schwarzenbach against the Electric Water Power Company of Oneonta.    From a judgment for plaintiff, defendant appeals.    Affirmed.

The action was for damages caused by the flooding of plaintiff's lands, and for an injunction to restrain such flooding.    The plaintiff owned about 30 acres of land in the town of Oneonta, upon a portion of which he had a factory and warehouse for the manufacture and sale of fertilizers and chemicals.    The remainder of said lands, except the 2.07 acres hereinafter mentioned, were used for general farm purposes.    The defendant owned about 47 acres of land in said town, through which the Susquehanna river flows; and in the years 1898 and 1899 it erected dams across that river, and constructed dikes and dams, and created a large reservoir, and by means of such dams and dikes

raised the surface of said river eight feet or more. On the 9th day of September, 1898, the plaintiff executed and delivered to the defendant an instrument or letter as follows:

"New York, September 9, 1898.

"Mr. M. L. Keyes, Prest. of the Oneonta Electric Water Power Co., Oneonta, N. Y. Dear Sir: I will give you the privilege to erect a dam on my property known as the Fertilizer Co.'s land situated in the Town of Oneonta, and flood the land below the dam according to a sketch and measuring about 2.07 acres, for the sum of Seventy-five Dollars ($75.00).

"Yours very respectfully,          A. Schwarzenbach."

And within two or three days thereafter the defendant made and delivered to the plaintiff its check for $75 in acceptance of the proposition contained in the instrument above mentioned, which check the plaintiff kept, and he has received and retained the proceeds thereof. Thereafter the defendant constructed a dike or dam on plaintiff's property in accordance with the permission given in said instrument of September 9th, and in accordance with the sketch therein referred to; and in the latter part of the summer or early fall of 1899 the defendant filled its said reservoir, thereby flooding said 2.07 acres of plaintiff's land below said dike or dam on his lands. Thereafter such flooding was continuous, except for a short interruption in the summer of 1901. When the water in the reservoir is of the height of the crest of the overflow dam at the lower or westerly end of the reservoir, which is the dam across the Susquehanna river, it is on a level of a line about 16 inches below the floor of the plaintiff's warehouse, which is above said reservoir, and above the dike or dam constructed on plaintiff's land, and the water in the reservoir is frequently above the level of the crest of said dam. During all the time water has been held in said reservoir, and by reason thereof water has percolated through or under the dam or dike constructed by the defendant on plaintiff's land, or through the soil beneath it, onto the plaintiff's land, and covered a portion thereof not included in said 2.07 acres with water, and rendered about 2 acres thereof untillable. Such water so percolating through also damaged plaintiff's fertilizers, and also the usable value of plaintiff's factory and machinery. The court found the facts substantially as above stated, and decided that the act of the defendant in collecting and retaining water in its reservoir, and allowing the same to pass therefrom over the plaintiff's lands, other than the 2.07 acres, was unlawful and constituted a continuing trespass, and awarded plaintiff the damages it found he had sustained, and an injunction enjoining the defendant from collecting and retaining water in its reservoir, so long as the same percolates upon the lands of the plaintiff to his damage. From the judgment entered upon such decision the defendant appeals.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

A. R. Gibbs, for appellant.
Alva Seybolt, for respondent.

CHESTER, J. The dam which the plaintiff stated in the paper of September 9, 1898, he would give the defendant the privilege to erect upon his property, was a bank or levee at the upper end of the reservoir, which the defendant desired to fill by the erection of the dam across the river at the lower end of the reservoir; and the purpose of such bank or levee was, clearly, to prevent the waters, when raised by the dam across the river, from flowing back and upon the premises above the reservoir; and the purpose of the defendant in procuring the plaintiff's assent to the paper of September 9, 1898, was to get the right to flood 2.07 acres of plaintiff's land, as a portion of its reservoir. Without the instrument the defendant would have had no right by the

erection of its dam across the river to set the water back and flood any of the plaintiff's land, and, if it did so, it would clearly be liable for all damages to plaintiff's land caused thereby. By the instrument the right is given to defendant to flood a specific amount of plaintiff's land. The defendant is given no right by it to flood any land other than the 2.07 acres therein mentioned. It has in fact flooded nearly twice as much of plaintiff's land as it purchased the right to flood, and has by such flooding not only caused damages thereto, but also to his fertilizers, his factory, and his machinery.

The theory of the defendant, as near as I can gather it, is that the instrument operates as a grant, and, when the plaintiff gave it to the defendant, and accepted the consideration therefor, the latter had the right to flow the water back to the breakwater or dam to be erected on plaintiff's land, and that any percolation of the water through or under such breakwater or dam on plaintiff's lands above was one of the necessary and natural consequences or incidents of the use to which the privilege granted was to be put when the reservoir was filled with water, and was appurtenant to the privilege granted. We need not determine whether the execution and delivery of this paper by the plaintiff to the defendant, and the subsequent payment to the plaintiff of the sum of $75 therein mentioned, were effective as a grant of the rights or privileges mentioned therein. We may assume, for the purposes of this case, that they were so effective. Yet it is clear from an examination of the paper that the only privilege given in it to the defendant by the plaintiff is to erect a dam on the latter's land, "and flood the land below the dam." No right was purchased or given to flood any lands above the dam. The dam was clearly intended as a breakwater to prevent such flooding above it, and to permit the defendant to accumulate water in the reservoir below without damaging plaintiff's lands and property above. The instrument gives nothing by implication. The privilege given is not expressed to be given with the appurtenances. The instrument does not contain the word "appurtenances," or. anything of a kindred meaning. To hold that by virtue of this instrument the defendant has the right to flood the plaintiff's premises above this dam is equivalent to a decision that by virtue of the instrument alone the defendant has procured an easement to flood plaintiff's lands above the dam as an appurtenant or as an incident to its right to flood his lands below it. We do not think the instrument is susceptible of such a construction, nor that such an easement can in any sense be regarded as an appurtenant or incident of such a right. The fact that the instrument contains an express mention of the precise amount of land that the plaintiff is willing to permit to be flooded below the dam, and also that the sketch referred to defines its precise location, fairly implies the exception by him of his lands and factory above the dam.

The sketch referred to in the instrument gives no specifications as to the character of the dam, or the manner of its proposed construction. It simply shows its location by a line drawn thereon. There was, however, some talk between the president of the defendant and the plaintiff, prior to the execution of the instrument, that the dam was to be constructed from 2 to 2½ feet above the water, and was to be 8 feet wide on top, and sloping in either direction to the ground, and it

appears that the bank was constructed substantially of that size; but, other than this, there is nothing in the record showing that the parties agreed upon any plans or specifications for the construction of the dam. The purpose of the dam being as we have stated, it was incumbent upon the defendant, if it desired to accumulate water in its reservoir above the level of plaintiff's lands above, to so construct the dam authorized by the instrument that, when the reservoir was filled above that level, only so much of plaintiff's land as it was thereby given the privilege of flooding should be covered with water. The court was right, therefore, in holding that the defendant's act in allowing the water to pass from its reservoir onto the plaintiff's lands above the dam was unlawful, and a continuing trespass upon the plaintiff's property.

A point is made that the plaintiff had an adequate remedy at law, and that therefore he had no right to seek the aid of a court of equity. But it has been held by numerous authorities that, where a trespass upon land is continuous, the owner has the right to invoke the power of a court of equity to restrain such trespass, and thus prevent a multiplicity of suits. Coatsworth v. Lehigh Valley R. Co., 156 N. Y. 457, 51 N. E. 301; Garvey v. Long Island R. Co., 159 N. Y 332, 54 N. E. 57, 70 Am. St. Rep. 550.

The judgment should be affirmed, with costs. All concur, except SMITH, J., dissenting in opinion in which PARKER, P. J., concurs.

SMITH, J. (dissenting). This judgment cannot be affirmed except in disregard of well-settled principles of elementary law. The trial court has found no negligence on the part of defendant in the building of the dike or otherwise, and yet has charged defendant with consequential damages suffered by plaintiff from the exercise by defendant of the right purchased for a valuable consideration. In Radcliff's Executors v. Mayor, 4 N. Y. 200, 53 Am. Dec. 357, Bronson, C. J., in writing for the court, says:

"But a man may do many things under a lawful authority, or on his own land, which may result in an injury to the property of others, without being answerable for the consequences. Indeed, the act done under lawful authority, if done in a proper manner, can never subject the party to an action, whatever the consequences may follow."

In Simpson v. Wabash R. Co., 145 Mo. 65, 46 S. W. 739, the licensor granted a railroad an easement to use certain lots for a pond. In flooding those lots for a pond, the water flowed over other lands. In reference thereto, the headnote, in part, reads:

"The fact that, in the enjoyment by the licensee of an easement of a pond in a dominant estate, water naturally and necessarily flowed onto and stood upon the servient estate, must be regarded as one of the burdens which the servient estate had to bear, resulting from the enjoyment by the licensee of his easement in the dominant estate, and not that the licensee, by the fact that his pond extended over a part of such servient estate, acquired an adverse possession and claim thereto."

In Seldon v. D. & H. Canal Co., 29 N. Y. 634, plaintiff brought an action to recover damages for land alleged to have been taken by defendant in the enlargement of its canal after the year 1846, and for

injuries to other lands belonging to plaintiff, adjoining those thus taken by the water, which soaked through the banks in consequence of raising the banks and increasing the depth of the water in the canal. The answer alleged a right to enlarge the canal both under a license and under the charter. The trial judge charged that, if the canal was enlarged under a license from the plaintiff, he could not recover. Judgment at the trial court was for the defendant. Upon appeal by plaintiff, Judge Selden, in discussing an exception to this part of the charge, says:

"It is insisted on the part of the plaintiff that a license to enlarge the canal would not justify raising the level of the water, and injuring the plaintiff's land by the consequent leakage of water through the banks. A license to enlarge the canal would authorize an increase of the depth of the channel, as well as of the width, and such increase of depth might be produced by excavations from the bottom, or by raising the banks, or by both; and the license, so long as it remained in force, would not only relieve the licensee from liability for making the enlargement, but also from liability from any consequences which might naturally flow from such enlargement. Stevens v. Stevens, 11 Metc. 251, 45 Am. Dec. 203; 1 Washb. on Real Prop. 390, § 6. If the injury to the plaintiff's land was owing to any want of skill or care in making the enlargement, and was not the natural result of the work, if carefully done, the license would not constitute a defense. A license to do an act cannot be held to screen the licensee from the consequences of carelessness or unskillfulness in the performance of the act. This position, however, is not available to the plaintiff, as the attention of the court was not called to it, and no request was made to have that subject presented to the jury; nor am I aware that there was any evidence tending to show either negligence or unskillfulness. The charge of the judge, therefore, so far as it was excepted to, was correct."

Judge Johnson, also writing in that case, takes the position that without a license there was a charter right to enlarge the canal, and, in the exercise of this right, defendant was not liable for consequential damages which did not result from its negligence or wrong. This rule he based upon unquestioned authority, and is approved as late as Fries v. N. Y. & H. R. R., 169 N. Y. 283, 62 N. E. 358.

This defendant is a quasi public corporation. It is so made by the statute creating it, and it is expressly given the powers incidental to such a corporation. Chapter 234, p. 709, Laws 1898. It has not merely a license, but a contract right to flood the land described. Within the authorities cited, it is not liable for the consequential damages, in the absence of a finding of wrongful or negligent construction. If plaintiff has, through a mistake as to the nature of the soil, made an improvident contract, equity may relieve him upon a return of the consideration paid, but that is not his action. With the consideration in his pocket, which he does not propose to release, he has procured a judgment for damages for the exercise of the very right for which that consideration was given.

I vote for a reversal of the judgment.