THE PEOPLE OF THE STATE OF NEW YORK ex rel. HENRY E. JANES, as Administrator de Bonis Non of EDWARD R. JANES, Deceased, Appellant, *v.* WILLIAM E. STILLINGS et al., as Commissioners, Constituting the Change of Grade Damage Commission in the City of New York, et al., Respondents.

*People ex rel. Janes* v. *Stillings,* 131 App. Div. 647, reversed.
(Argued November 10, 1909; decided January 4, 1910.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April 14, 1909, which dismissed a writ of certiorari and affirmed the proceedings of the defendant commissioners in dismissing the relator's claim for want of jurisdiction.

*Barclay E. V. McCarty, Jared G. Baldwin, Jr.,* and *John M. Harrington,* for appellant.

*Francis K. Pendleton, Corporation Counsel (Terence Farley* and *Theodore Connoly* of counsel), for respondents.

*Per Curiam.* But a single question is involved in this appeal. The relator's intestate was the owner of certain

lands in the 23rd ward of the city of New York, formerly in the town of Morrisania, Westchester county, which was annexed to the city in 1874. Before the annexation the grades of the streets and avenues on which the intestate's lands abutted had been established by the commission constituted under chapter 841 of the Laws of 1868. By chapter 721 of the Laws of 1887 jurisdiction was conferred on the department of public parks of the city to change the location and grades of the streets and avenues in the 23rd and 24th wards and also to agree with the New York & Harlem Railroad Company upon plans for the depression of the tracks and changing the grades of the railroads of the company, and for carrying the streets and avenues over or under the railroads. Chapter 545 of the Laws of 1890 authorized the election of a commissioner of street improvements for these two wards, and provided that after the 1st of January, 1891, the said commissioner should have exclusive power to locate, lay out all streets, avenues, public squares and places, establish the width and grade of such streets "and all the powers, rights, duties, authority and obligations in relation to said streets, roads, avenues, public squares and places, bridges, tunnels, sewerage and drainage, which prior to the passage of this act, were conferred upon, possessed and exercised by the said department of public parks, are hereby transferred to, conferred upon, and are to be exercised by the said commissioner of street improvements," (Section 2,) with certain exceptions not material here. The department of public parks was directed to transfer to the commissioner all the maps, profiles, contracts, documents and paraphernalia relating to said streets and avenues. The subject of an agreement with the railroad company is not mentioned in this statute. Under this last statute the commissioner, on the 21st of March, 1894, filed a map by which the grades of certain of the streets on which the relator's land abutted were changed. By chapter 567 of the Laws of 1894, amending chapter 537 of the Laws of 1893, it is enacted : (Section 1) "All persons owning lands, tenements or hereditaments in One hundred and fifty-seventh street, formerly Prospect street, or in any other street, or avenue in the twenty-third or twenty-fourth wards in the

city of New York, which lands, tenements or hereditaments have sustained damages, or will sustain damages, by reason of a change of grade of any street or avenue, which change was made in conformity with the provisions of chapter eight hundred and forty-one of the laws of eighteen hundred and sixty-eight; chapters three hundred and twenty-nine and six hundred and four of the laws of eighteen hundred and seventy-four; chapter three hundred and forty-six of the laws of eighteen hundred and seventy-six; chapter seven hundred and twenty-one of the laws of eighteen hundred and eighty-seven, or chapter three hundred and twenty-nine of the laws of eighteen hundred and ninety-two; * * * shall be entitled to prove and recover the same from the mayor, aldermen and commonalty of the city of New York, as hereinafter provided. Provided, however, that as to lands or lands and buildings fronting on any street or avenue, except fronting on One hundred and fifty-seventh street, the benefits under this act shall be limited to the area within which grades are changed, as shown on any map filed pursuant to chapter seven hundred and twenty-one of the laws of eighteen hundred and eighty-seven." It is under this statute that the relator seeks compensation for the injuries to his property by the change of grade, for, of course, under the common law he has no claim therefor. To the relator's claim the city answers that the change of grade was not made under any of the statutes enumerated in the act of 1894 and that, therefore, the relator is entitled to no relief, and so the learned court below has held. It is not to be denied that the omission of the statute of 1890 from the enumeration found in the act of 1893 affords some ground in support of the decision below; but we think it is not conclusive on the question. The hardship of the rule, early declared with us (*Radcliff's Exrs.* v. *Mayor, etc., of Brooklyn*, 4 N. Y. 195), that an abutter is not entitled to compensation for injuries occasioned to his property by a change of the grade of a street, has long been recognized, and now, by various statutes, the abutter is generally protected throughout the whole state. The statute of 1894 is, therefore, to be considered a remedial one and is to be liberally construed. (*People ex rel. Purdy* v. *Fitch*, 147 N. Y. 355; *People ex rel. Brisbane* v. *Zoll*, 97

N. Y. 203.) If the act of 1890 were an independent statute first dealing with the subject-matter, it might well be held that the statute of 1894 did not apply to changes of grade made in pursuance of that act. Such, however, is not the case. Every power conferred on the commissioner of street improvements had been previously conferred on the department of public parks, and though those powers are enumerated in the statute at some length, it concludes with the general provision transferring to the commissioner all the powers of the department. Therefore, the statute of 1890 is not to be deemed the creation of a new authority to do the things enumerated in the act, but as a transfer of power, previously given, from one set of public officers to another officer. It is difficult to believe that the legislature intended to make the right of the abutter to compensation for injury occasioned by the exercise of the same power depend on the particular officer by whom the power was exercised. If this view be correct, then it fairly follows that the change of grade made by the commissioner was made under the act of 1887 as well as under the act of 1890, and falls within the provisions of the act of 1894.

The order of the Appellate Division and of the commissioners should be reversed, with costs in both courts, and the commissioners directed to hear and determine relator's claim upon the merits.

CULLEN, Ch. J., HAIGHT, VANN, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Ordered accordingly.